**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email: ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tfrey@carlyoncica.com

*Nevada Counsel for Movant, Mark L. Bunce*

**MILLER & MARTIN PLLC**
PAUL ALEXANDER, ESQ.
(*Pro Hac vice admitted*)
MICHAEL KOHLER, ESQ.
(*Pro Hac vice admitted*)
1180 W Peachtree Street, NW, Suite 2100
Atlanta, GA 30309
Phone: (404) 962-6100
Email: paul.alexander@millermartin.com
michael.kohler@millermartin.com

*Lead Counsel for Movant, Mark L. Bunce*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 25-10024-abl |
| | Chapter 11 |
| VISUAL TECHNOLOGY INNOVATIONS, INC., | |
| | **RESPONSE TO OBJECTION TO CLAIM** |
| Debtor. | |
| | Hearing Date: May 14, 2025 |
| | Hearing Time: 1:30 P.M. |

40148108v1

Mark L. Bunce, a/k/a Mark Leonard Bunce ("Creditor"), a creditor in the above-captioned bankruptcy case, hereby responds to the objection to his claim by Debtor Visual Technology Innovations, Inc. ("Debtor") (Doc 61). In support, Creditor respectfully shows the following:

## I.  INTRODUCTION

1. In 2021, Creditor was fraudulently induced into loaning more than $1,000,000 to the Debtor, an alter ego of Mathu Rajan ("Mr. Rajan"), which funds were misappropriated by Mr. Rajan. After numerous misrepresentations and unfulfilled promises by Mr. Rajan and his agents over the course of two years, Creditor had no option but to file a lawsuit, and the parties have been in litigation in the U.S. District Court for the Eastern District of Pennsylvania since May 2023. The Debtor filed this Chapter 11 case as a litigation tactic less than twenty-four hours before a scheduled hearing on Creditor's motion for summary judgment in the district court case, solely to avoid an adverse ruling. Mr. Rajan also filed a Chapter 13 bankruptcy case in the Eastern District of Pennsylvania on the same day, about twenty minutes after this case was filed. This bankruptcy case is one in a series of improper efforts by the Debtor and Mr. Rajan to hinder and delay Creditor's rightful efforts to adjudicate his claims and collect on his debt. Now, Debtor (and Mr. Rajan) seeks to use this Court to deny Creditor the claims he was on the precipice of adjudicating before the Debtor used this bankruptcy case to pause those proceedings. As set forth below, the Debtor's partial objection to Creditor's claims in the Eastern District of Pennsylvania are baseless and should be denied.

## II.  BACKGROUND

2. The Debtor is a Nevada corporation formed on or about January 6, 2021. See Doc 1, Verified Statement of Mathu G. Rajan in Support of Voluntary Petition.

3. The Debtor filed this case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on January 6, 2025, at approximately 10:27 A.M. (Pacific) (Doc 1), approximately twenty-four hours before a hearing scheduled on Creditor's Motion for Summary Judgment in a case pending against the Debtor and Mr. Rajan in the U.S. District Court for the

40148108v1

Eastern District of Pennsylvania, Case No. 2:23-cv-01740.  See genuine copy of Notice of Hearing in Case No. 2:23-cv-01740 (E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "1".[1]

4.    Also on January 6, 2025, at approximately 10:47 A.M. (Pacific), Mr. Rajan filed a case under Chapter 13 of the Bankruptcy Code in the Eastern District of Pennsylvania, which case was assigned Case No. 25-10042-amc.  Mr. Rajan's first Chapter 13 bankruptcy case was dismissed on January 27, 2025, due to Mr. Rajan's failure to timely file papers required by the court in that case.  See genuine copies of p. 1 of Voluntary Petition for Individuals Filing Bankruptcy, and Order of Dismissal in Case No. 25-10042-amc (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as composite Exhibit "2".

5.    Mr. Rajan refiled a Chapter 13 bankruptcy case on January 28, 2025, in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 25-10356-djb.  That second Chapter 13 bankruptcy case remains pending.  See genuine copy of docket for Case No. 25-10356-djb (Bankr. E.D. Pa.), as of April 3, 2024, attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "3".

6.    According to Debtor's statement of financial affairs, Mr. Rajan is the Debtor's president, secretary, treasurer, director, and holder of 100% of issued shares.  See Doc 13, Statement of Financial Affairs No. 28.

7.    According to the Debtor's schedules, its most valuable asset is 52,562 shares (0.06% ownership) in Stream TV Networks, Inc. ("Stream TV"), a debtor in a Chapter 11 case also pending

---

[1] Debtors request that the Court take judicial notice of the pleadings and Court dockets referenced herein pursuant to FRE 201.  *See, e.g., U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)("a court may take judicial notice of its own records in other cases"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020)(court may take judicial notice of orders and filings, including proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue); *Bank of Am., N.A. v. CD-04, Inc.* (*In re Owner Mgmt. Serv., LLC Trustee Corps.*), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

40148108v1

in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 23-10763. See Doc 13, Schedule A/B, No. 15. While Debtor's Schedule B reflects that its shares of Stream TV are supposedly worth $3,942,120, curiously Schedule B in Mr. Rajan's second Chapter 13 bankruptcy case reflects that his 1,018,200 shares in Stream TV have unknown value. Mr. Rajan's Chapter 13 schedules also reflect that his 1,000,000 shares in the Debtor have unknown value. See a genuine copy of Schedule A/B in Case No. 25-10356-djb (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "5".

8. In its status report (Doc 24) filed on February 19, 2025, the Debtor acknowledges that "[f]urther developments in the Pennsylvania Bankruptcy Court and Pennsylvania District Court will impact this Chapter 11 Case." In fact, substantially all of Stream TV's assets have already been sold in its pending Chapter 11 case, and any shares in Stream TV have little or no value. See a genuine copy of an order entered on January 29, 2025, denying stay pending appeal of the sale order in In re Stream TV Networks, Inc., et al., Chapter 11 Case No. 23-10763 (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "6". While the debtor also lists a lawsuit with an unknown value against Burlington Resources Asia Ltd. and Timothy McCarthy, pending in the U.S. District for the District of Nevada, based on the docket in that case, the defendants have not been served (even though proof of service was due July 15, 2024), and the Debtor does not appear to be prosecuting that case. See genuine copy of docket for Case No. 2:24-cv-00728 (D. Nev.), as of April 2, 2024, attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "7". Moreover, upon information and belief, the claims in that case are believed to be of little or no value to the estate.

9. According to the Debtor's schedules, the Debtor has had no revenue in the past three years. See Doc 13, Statement of Financial Affairs No. 1.

10. Based on Mr. Rajan's testimony at the Debtor's meeting of creditors hearing, the Debtor has no employees. [note- is there a declaration from someone who attended? Or can you say

40148108v1

something like the schedules show no employees and there was no first day motion to pay employees]

11. According to the Debtor's schedules, at the time this case was filed the Debtor had only $2,320.61 in its sole bank account. See Doc 13, Schedule A/B, No. 3.

12. According to the Debtor's monthly operating report covering January 6–31, 2025 (Doc 31), the Debtor had no cash receipts and cash on hand has declined from $2,304.6 to $1,908.72 during that period. Further, according to the Debtor's monthly operating report covering February 2025 (Doc 34), the Debtor had no cash receipts and cash on hand declined from $1,908.72 to $1,496.85 during that period. This has continued according to the Debtor's monthly operating report covering March 2025 (Doc 66), which states the Debtor had no cash receipts and that cash on hand declined from $1,496.85 to $1,480.83 during that period.

13. According to Mr. Rajan's statement in support of the Debtor's petition, the Debtor did not maintain a balance sheet, statement of operations, or cash flow statement on a regular basis, and has never filed federal income tax returns. See Doc 1, Verified Statement of Mathu G. Rajan in Support of Voluntary Petition.

14. Based on Debtor's schedules (Doc 13), the application to employ counsel (Doc 14), and its monthly operating report covering January 6–31, 2025 (Doc 31), the Debtor obtained money for a retainer from Visual Semiconductor, Inc., a company believed to be owned in part and controlled by Mr. Rajan. See Doc 13, Disclosure of Compensation for Attorney for Debtor, No. 2, Doc 14, ¶ 14, and Doc 31, p. 7. Upon information and belief and based on the Debtor's schedules and statement of financial affairs, the Debtor has no ability to repay the funds from Visual Semiconductor, Inc., and will have no ability to pay professionals beyond any existing retainer without incurring additional administrative debt.

15. On March 17, 2025, Creditor filed a Proof of Claim in the Debtor's bankruptcy case in the amount of $6,854,271.60 (Claim 3-1, as amended, Claim 3-2). This amount includes the principal of the fraudulently induced loan to the Debtor, pre-petition interest, as well as an estimation of punitive damages and attorneys' fees.

40148108v1

16. The fraudulently induced loan from Creditor to the Debtor is evidenced by, among other things, the following documents (collectively, the "Loan Documents"): (i) a Convertible Note #VN21017-00 dated February 25, 2021, executed by Visual Technology Innovations, Inc., and Mark Leonard Bunce, together with Investment Warrant with an original issue date of February 25, 2021, and having Warrant Agreement # VW21023, and Investment Warrant with an original issue date of February 25, 2021, and having Warrant Agreement # VW21024 (See Claim No. 3-2, Attachment "2"); (ii) a Convertible Note #VN21019-00 dated March 8, 2021, executed by Visual Technology Innovations, Inc. and Mark Leonard Bunce, together with Investment Warrant with an original issue date of March 8, 2021, and having Warrant Agreement # VW21025, and Investment Warrant with an original issue date of March 8, 2021, and having Warrant Agreement # VW21026 (See Claim No. 3-2, Attachment "3"); (iii) an Amendment to Note dated as of April 5, 2021, between Mark Leonard Bunce and Visual Technology Innovations, Inc., together with Investment Warrant with an original issue date of April 5, 2021, and having Warrant Agreement # VW21029 (See Claim No. 3-2, Attachment "4"); (iv) a Convertible Note Agreement dated as of May 4, 2021, between Visual Technology Innovations, Inc. and Mark Leonard Bunce, together with attached exhibits including Convertible Note # VN 21021-00 dated May 4, 2021 (See Claim No. 3-2, Attachment "5"); and (v) an Amendment to Note dated as of November 23, 2021, between Visual Technology Innovations, Inc., and Mark Leonard Bunce, together with Investment Warrant with an original issue date of November 23, 2021, and having Warrant Agreement # VW21035 (See Claim No. 3-2, Attachment "6"). While Section 17 of the November 23, 2023 Warrant Agreement (part of the most recent agreement) provides that the warrant will be governed under Nevada law, Section 18 contains a provision whereby the parties submit to the exclusive jurisdiction of the federal courts of the United States of America for the Eastern District of Pennsylvania or the Court of Common Please Pleas of the Commonwealth of Pennsylvania (See Claim No. 3-2, Attachment "6," Warrant Agreement §§ 17 & 18.

### III.  MEMORANDUM OF POINTS AND AUTHORITIES

40148108v1

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A timely filed and duly executed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Therefore, the burden is on the objecting party to come forward with admissible evidence to establish the basis of the objection. William L. Norton, Norton Bankruptcy Law and Practice § 48:28 (3d ed. April 2020).

### A.   In the Name of Judicial Economy, a Ruling on Debtor's Objection is Premature While Creditor's Motion to Transfer or Dismiss is Pending.

Creditor filed his Motion to Transfer; or, in the Alterative, to Dismiss (Doc 48) on April 3, 2025, asking that this case be either transferred to the Bankruptcy Court for the Eastern District of Pennsylvania or dismissed. That Motion is currently scheduled for hearing on May 21, 2025, one week after the hearing on Debtor's objection. If this case is either transferred or dismissed, then any ruling on Debtor's objection or any other substantive motion would either unnecessarily bind the Pennsylvania Bankruptcy Court (in the event of transfer) or be unnecessary (in the event of dismissal). The interests of justice and judicial economy require that Motion be ruled upon before any other substantive motions in this proceeding.

Fed. R. Bankr. P. 1014 allows a Bankruptcy Court to "transfer the case to another district in the interest of justice or for the convenience of the parties." See also 11 U.S.C. § 1412. The "interest of justice" is analyzed under a "broad and flexible standard which must be applied on a case-by-case basis," *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990), with "the most important consideration [being] whether the requested transfer would promote the economic and efficient administration of the estate." *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979). One element of the economic administration of the estate courts have looked to is avoiding the need for repeating substantial work and expense in one district, requiring a "learning curve" to bring the case up to speed would be duplicative and expensive. *In re Lebbos*, No. BAO.EC-07-1163-JUNAM, 2007 WL 7540977, at *6 (B.A.P. 9th Cir. Nov. 14, 2007) (citing *In re Enron Corp.*, 284 B.R. 376, 395 (Bankr. S.D.N.Y. 2002).

40148108v1

Ruling on Debtor's objection now, before a determination has been made as to whether the case will be transferred to the district where the Debtor's owner, purported most valuable asset, business records, and sole principal office are located or whether the case will be dismissed entirely, invites potential duplication of efforts and expense where none is necessary. If this Court decides at the upcoming hearing that this case should be transferred, then a ruling on Debtor's objection would restrain the new court's ability to efficiently and effectively rule on the matters before it. If this Court decides the Debtor's case should be dismissed, then a ruling on Debtor's objection would be moot and a waste of this Court's time and resources.

Creditor therefore asks that any ruling on Debtor's objection be continued until after a ruling on Creditor's Motion to Transfer; or, in the Alterative, to Dismiss.

B. **Debtor's Partial Objection to Creditor's Claim Fails to Take into Account Creditor's Alter Ego Allegations or Creditor's Ability to Amend the Complaint in the Pennsylvania Litigation.**

Creditor's claim is based upon litigation over a loan of more than $1,000,000 Creditor was fraudulently induced into making to the Debtor. Creditor has alleged he was fraudulently induced to make this loan by Mathu Rajan, who used the Debtor as his alter ego. After numerous misrepresentations and unfulfilled promises by Mr. Rajan and his agents over the course of two years, Creditor had no option but to file a lawsuit, and the parties have been in litigation in the U.S. District Court for the Eastern District of Pennsylvania since May 2023. Creditor's complaint in that lawsuit brings claims of (1) breach of contract against the Debtor; (2) fraudulent inducement against Mr. Rajan; and (3) unjust enrichment against Mr. Rajan. Creditor's complaint seeks the remedies of compensatory damages, pre-judgment interest, post-judgment interest, punitive damages, and attorneys' fees. Creditor's pending summary judgment motion in that case sought a ruling on the Debtor and Mr. Rajan were merely alter egos. See Debtor's Motion to Revoke Election (Doc 53, Ex. 5). The Debtor filed its petition mere hours before Creditor's summary judgment hearing in the Eastern District of Pennsylvania, pausing that litigation before a ruling on whether Debtor and Mr. Rajan were alter egos and leaving Creditor's claim contingent.

40148108v1

Creditor's Proof of Claim is for $6,854,271.60, broken into the following component parts owed by Debtor:

| | |
|---|---:|
| Unpaid Principal: | $1,050,000.00 |
| Accrued Interest as of the date of filing: | $278,724.66 |
| Attorneys' Fees and Costs through December 31, 2024: | $384,843.24 |
| Estimated Punitive Damages: | $5,140,703.70 |
| | **$6,854,271.60** |

(Claim 3-2). Debtor does not object to Creditor's entire claim. Debtor makes no argument that either the unpaid principal or the accrued interest as of the date of filing should be disallowed.

The Debtor objects to just the portion of Creditor's claim concerning attorneys' fees and punitive damages. This is based on a myopic presentation of the current status of the underlying litigation and of the parties to that litigation. Creditor has alleged the Debtor and Mr. Rajan are mere alter egos of each other. While it is true the two tort claims were brought against the Debtor's principal, that is a distinction without a difference when Debtor and its principal are effectively one.

Creditor's claims for punitive damages and for attorneys' fees are both rooted in the bad faith and fraudulent actions Mr. Rajan carried out, in large part while wearing the Debtor as an alter ego. Nevada law recognizes alter ego/reverse veil piercing theories when (1) the corporation was influenced and governed by the person asserted to be the alter ego; (2) there was such unity of interest and ownership that one is inseparable from the other; and (3) adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice. *In re Nat'l Audit Def. Network*, 367 B.R. 207, 230 (Bankr. D. Nev. 2007) (citing *LFC Mktg. Group, Inc. v. Loomis*, 116 Nev. 896, 8 P.3d 841 (Nev. 2000)). *See also In re Midnight Madness Distilling, LLC*, No. AP 23-00047-MDC, 2024 WL 3517620, at *22 (Bankr. E.D. Pa. July 23, 2024) (citing *Mortimer v.*

40148108v1

*McCool*, 667 Pa. 134, 255 A.3d 261, 266 (Pa. 2021) to apply alter ego/reverse veil piercing theories under Pennsylvania law).

Because Debtor was fully controlled by Mr. Rajan, to the point of there being no distinction between the two, the fraudulent misrepresentations of Mr. Rajan that led Creditor to loan Debtor over a million dollars should be ascribed to the Debtor. And if the fraud can be ascribed to the Debtor, then so should the punishment for those bad acts, which include both punitive damages and attorneys' fees. For that reason, Debtor's arguments that Creditor "never pled any tortious conduct against the Debtor" (Doc 61 at 8), and thus attorneys' fees cannot be awarded, or that Creditor "did not assert a fraud claim against the Debtor" (Doc 61 at 9), and thus punitive damages cannot be awarded, fail.

To the extent Debtor's objection to Creditor's claims for punitive damages and attorneys' fees are based not on Creditor's substantive alter ego claims, but rather on procedural questions of what was pled against whom, that objection is also misplaced. Contrary to the Debtor's assertions, Creditor is still able to amend his complaint in the Eastern District of Pennsylvania if necessary.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings, and "[a] liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)(2)." 3 Moore's Federal Practice - Civil § 15.14. "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)); *see also Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Under Rule 15, a "court should freely give leave when justice so requires." It is well established that "motions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Adams v. Gould*, 739 F.2d 858, 867-68 (3d Cir. 1984)).

Although Rule 15 governs amendments to pleadings, "it is appropriate to first analyze disputes of amended pleadings under Rule 16 before proceeding to evaluate it under the rubric of Rule 15" once the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed. *Albright v. Concurrent Techs. Corp.*, No. 3:21-CV-000112, 2023 WL 5548810, at *1–2 (W.D. Pa. Aug. 29, 2023). Under Fed. R. Civ. P. 16(b)(4), a plaintiff is entitled to amend a complaint, even after

40148108v1

a scheduling order deadline has passed, "for good cause and with the judge's consent." "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, Advisory Committee Note (1983).

The Debtor acknowledges this good cause requirement but merely presents the conclusory assertion that "such relief is highly doubtful to say the least" (Doc 61 at n.2) due to previous extensions. No case law is cited, nor does Debtor mention that its attorney in the Eastern District of Pennsylvania was recently ordered to pay a portion of Creditor's attorneys' fees as a result of violations of the discovery orders in that case related to failures to provide information about the Debtor's use of the loaned funds; this order was only entered after the petition date. See Case No. 2:23-cv-01740 (E.D. Pa.) (Doc 155). If necessary, once the litigation in the Eastern District of Pennsylvania resumes, either following the dismissal of the Debtor's bankruptcy or following the granting of a stay relief motion seeking to allow Creditor to liquidate his claim against the Debtor, Creditor will elect to amend his complaint, to clearly link his alter ego claims against Mr. Rajan and the Debtor as one in the same.

## IV.    CONCLUSION

For the reasons set forth above, Creditor Mark L. Bunce asks this Court continue any ruling on Debtor's objection until after a ruling on Creditor's Motion to Transfer; or, in the Alterative, to Dismiss. In the event this Court does rule on the Debtor's objection to Creditor's claim, Creditor asks the Debtor's objection be denied in its entirety.

Respectfully submitted, this 30th day of April, 2025.

**MILLER & MARTIN PLLC**

*/s/ Paul M. Alexander*
Paul M. Alexander, Esq.  (*Admitted pro hac vice*)
Georgia Bar No. 009003
Michael P. Kohler, Esq. (*Admitted pro hac vice*)
Georgia Bar No. 427727
Email:  Paul.Alexander@millermartin.com
Michael.Kohler@millermartin.com
*Lead Counsel for Movant, Mark L. Bunce*

40148108v1

AND

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CIA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email:  ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tfrey@carlyoncica.com

*Nevada Counsel for Movant, Mark L. Bunce*

40148108v1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Carlyon Cica Chtd. and that, on the 30th day of April 2025, I caused to be served a true and correct copy of **MOTION TO TRANSFER VENUE; OR, IN THE ALTERNATIVE, TO DISMISS** in the following manner.

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

/s/ *Cristina Robertson*
An employee of Carlyon Cica Chtd.

40148108v1