**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email: ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tfrey@carlyoncica.com

*Nevada Counsel for Creditor, Mark L. Bunce*

**MILLER & MARTIN PLLC**
PAUL ALEXANDER, ESQ.
(*Pro Hac Vice admitted*)
MICHAEL KOHLER, ESQ.
(*Pro Hac Vice admitted*)
1180 W Peachtree Street, NW, Suite 2100
Atlanta, GA 30309
Phone: (404) 962-6100
Email: paul.alexander@millermartin.com
michael.kohler@millermartin.com

*Lead Counsel for Creditor, Mark L. Bunce*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>VISUAL TECHNOLOGY INNOVATIONS, INC.,<br><br>Debtor. | Case No.: 25-10024-abl<br>Chapter 11<br><br>**RESPONSE IN OPPOSITION TO DEBTOR'S MOTION TO: (I) REVOKE ELECTION TO PROCEED UNDER SUBCHAPTER V**<br><br>Hearing Date:  May 14, 2025<br>Hearing Time:  1:30 P.M. |

40148503v1

Mark L. Bunce, a/k/a Mark Leonard Bunce ("Creditor"), a creditor in the above-captioned bankruptcy case, hereby responds in opposition to the motion by Debtor Visual Technology Innovations, Inc. ("Debtor") requesting that it be permitted to revoke its subchapter V election and/or convert its case to instead proceed under "standard" chapter 11 (Doc 53). In support, Creditor respectfully shows the following:

## I. INTRODUCTION

1. The Debtor filed this Chapter 11 case as a litigation tactic less than twenty-four hours before a scheduled hearing on Creditor's motion for summary judgment in the Eastern District of Pennsylvania, solely to avoid an adverse ruling. The Debtor's principal also filed a Chapter 13 bankruptcy case in the Eastern District of Pennsylvania on the same day, about twenty minutes after this case was filed. This bankruptcy case is one in a series of improper efforts by the Debtor and its principal to hinder and delay Creditor's rightful efforts to adjudicate his claims and collect on his debt. Since the opening of this case, the Debtor has not filed a plan, and its schedules and monthly operating reports show that the Debtor cannot file a plan that can feasibly repay its creditors. In short, the Debtor's conduct has only further demonstrated this case is tactical, not one made in good faith. As set forth below, should this Court decide to rule on the Debtor's Motion, it is in the best interest of creditors and cause exists to dismiss this case.

## II. BACKGROUND

2. The Debtor is a Nevada corporation formed on or about January 6, 2021. See Doc 1, Verified Statement of Mathu G. Rajan in Support of Voluntary Petition.

3. The Debtor filed this case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on January 6, 2025, at approximately 10:27 A.M. (Pacific) (Doc 1), approximately twenty-four hours before a hearing scheduled on Creditor's Motion for Summary Judgment in a case pending against the Debtor and Mr. Rajan in the U.S. District Court for the Eastern District of Pennsylvania, Case No. 2:23-cv-01740. See genuine copy of Notice of Hearing in Case No. 2:23-cv-01740 (E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "1".

4. Also on January 6, 2025, at approximately 10:47 A.M. (Pacific), Mr. Rajan filed a case under Chapter 13 of the Bankruptcy Code in the Eastern District of Pennsylvania, which case was assigned Case No. 25-10042-amc. Mr. Rajan's first Chapter 13 bankruptcy case was dismissed on January 27, 2025, due to Mr. Rajan's failure to timely file papers required by the court in that case. See genuine copies of p. 1 of Voluntary Petition for Individuals Filing Bankruptcy, and Order of Dismissal in Case No. 25-10042-amc (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as composite Exhibit "2".

5. Mr. Rajan refiled a Chapter 13 bankruptcy case on January 28, 2025, in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 25-10356-djb. That second Chapter 13 bankruptcy case remains pending. See genuine copy of docket for Case No. 25-10356-djb (Bankr. E.D. Pa.), as of April 3, 2024, attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "3".

6. According to Debtor's statement of financial affairs, Mr. Rajan is the Debtor's president, secretary, treasurer, director, and holder of 100% of issued shares. See Doc 13, Statement of Financial Affairs No. 28.

7. According to the Debtor's schedules, its most valuable asset is 52,562 shares (0.06% ownership) in Stream TV Networks, Inc. ("Stream TV"), a debtor in a Chapter 11 case also pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 23-10763. See Doc 13, Schedule A/B, No. 15. While Debtor's Schedule B reflects that its shares of Stream TV are supposedly worth $3,942,120, curiously Schedule B in Mr. Rajan's second Chapter 13 bankruptcy case reflects that his 1,018,200 shares in Stream TV have unknown value. Mr. Rajan's Chapter 13 schedules also reflect that his 1,000,000 shares in the Debtor have unknown value. See a genuine copy of Schedule A/B in Case No. 25-10356-djb (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "5".

8. In its status report (Doc 24) filed on February 19, 2025, the Debtor acknowledges that "[f]urther developments in the Pennsylvania Bankruptcy Court and Pennsylvania District Court will impact this Chapter 11 Case." In fact, substantially all of Stream TV's assets have already been sold in its pending Chapter 11 case, and any shares in Stream TV have little or no value. See a genuine

40148503v1

copy of an order entered on January 29, 2025, denying stay pending appeal of the sale order in In re Stream TV Networks, Inc., et al., Chapter 11 Case No. 23-10763 (Bankr. E.D. Pa.), attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "6". While the debtor also lists a lawsuit with an unknown value against Burlington Resources Asia Ltd. and Timothy McCarthy, pending in the U.S. District for the District of Nevada, based on the docket in that case, the defendants have not been served (even though proof of service was due July 15, 2024), and the Debtor does not appear to be prosecuting that case.  See genuine copy of docket for Case No. 2:24-cv-00728 (D. Nev.), as of April 2, 2024, attached to Creditor's Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc 48) as Exhibit "7".  Moreover, upon information and belief, the claims in that case are believed to be of little or no value to the estate.

9. According to the Debtor's schedules, the Debtor has had no revenue in the past three years.  See Doc 13, Statement of Financial Affairs No. 1.

10. The Debtor does not have any employees, as shown by the Debtor's schedules, the lack of first date motions to pay employees, and the Debtor's monthly operating reports. See, e.g., Doc 66 at 1.

11. According to the Debtor's schedules, at the time this case was filed the Debtor had only $2,320.61 in its sole bank account.  See Doc 13, Schedule A/B, No. 3.

12. According to the Debtor's monthly operating report covering January 6–31, 2025 (Doc 31), the Debtor had no cash receipts and cash on hand has declined from $2,304.6 to $1,908.72 during that period.  Further, according to the Debtor's monthly operating report covering February 2025 (Doc 34), the Debtor had no cash receipts and cash on hand declined from $1,908.72 to $1,496.85 during that period. This has continued according to the Debtor's monthly operating report covering March 2025 (Doc 66), which states the Debtor had no cash receipts and that cash on hand declined from $1,496.85 to $1,480.83 during that period.

13. According to Mr. Rajan's statement in support of the Debtor's petition, the Debtor did not maintain a balance sheet, statement of operations, or cash flow statement on a regular basis, and has never filed federal income tax returns.  See Doc 1, Verified Statement of Mathu G. Rajan in Support of Voluntary Petition.

40148503v1

14. Based on Debtor's schedules (Doc 13), the application to employ counsel (Doc 14), and its monthly operating report covering January 6–31, 2025 (Doc 31), the Debtor obtained money for a retainer from Visual Semiconductor, Inc., a company believed to be owned in part and controlled by Mr. Rajan. See Doc 13, Disclosure of Compensation for Attorney for Debtor, No. 2, Doc 14, ¶ 14, and Doc 31, p. 7. Upon information and belief and based on the Debtor's schedules and statement of financial affairs, the Debtor has no ability to repay the funds from Visual Semiconductor, Inc., and will have no ability to pay professionals beyond any existing retainer without incurring additional administrative debt.

15. On March 17, 2025, Creditor filed a Proof of Claim in the Debtor's bankruptcy case in the amount of $6,854,271.60 (Claim 3-1, as amended, Claim 3-2). This amount includes the principal of the fraudulently induced loan to the Debtor, pre-petition interest, as well as an estimation of punitive damages and attorneys' fees.

16. The fraudulently induced loan from Creditor to the Debtor is evidenced by, among other things, the following documents (collectively, the "Loan Documents"): (i) a Convertible Note #VN21017-00 dated February 25, 2021, executed by Visual Technology Innovations, Inc., and Mark Leonard Bunce, together with Investment Warrant with an original issue date of February 25, 2021, and having Warrant Agreement # VW21023, and Investment Warrant with an original issue date of February 25, 2021, and having Warrant Agreement # VW21024 (See Claim No. 3-2, Attachment "2"); (ii) a Convertible Note #VN21019-00 dated March 8, 2021, executed by Visual Technology Innovations, Inc. and Mark Leonard Bunce, together with Investment Warrant with an original issue date of March 8, 2021, and having Warrant Agreement # VW21025, and Investment Warrant with an original issue date of March 8, 2021, and having Warrant Agreement # VW21026 (See Claim No. 3-2, Attachment "3"); (iii) an Amendment to Note dated as of April 5, 2021, between Mark Leonard Bunce and Visual Technology Innovations, Inc., together with Investment Warrant with an original issue date of April 5, 2021, and having Warrant Agreement # VW21029 (See Claim No. 3-2, Attachment "4"); (iv) a Convertible Note Agreement dated as of May 4, 2021, between Visual Technology Innovations, Inc. and Mark Leonard Bunce, together with attached exhibits including Convertible Note # VN 21021-00 dated May 4, 2021 (See Claim No. 3-2, Attachment "5"); and (v)

40148503v1

an Amendment to Note dated as of November 23, 2021, between Visual Technology Innovations, Inc., and Mark Leonard Bunce, together with Investment Warrant with an original issue date of November 23, 2021, and having Warrant Agreement # VW21035 (See Claim No. 3-2, Attachment "6"). While Section 17 of the November 23, 2023 Warrant Agreement (part of the most recent agreement) provides that the warrant will be governed under Nevada law, Section 18 contains a provision whereby the parties submit to the exclusive jurisdiction of the federal courts of the United States of America for the Eastern District of Pennsylvania or the Court of Common Please Pleas of the Commonwealth of Pennsylvania (See Claim No. 3-2, Attachment "6," Warrant Agreement §§ 17 & 18).

17.    On April 8, 2025, the day after the Debtor's plan was due under 11 U.S.C. § 1189(b), the Debtor filed its Motion to Amend Voluntary Petition to Remove Subchapter V Election and Instead Proceed Under Standard Chapter 11; To Revoke Election to Proceed Under Subchapter V and Instead Proceed Under Standard Chapter 11; and Convert Subchapter V Case to Standard Chapter 11 Case (Doc 53). To date, no plan has been filed in this case.

### III.    MEMORANDUM OF POINTS AND AUTHORITIES

**A. In the Name of Judicial Economy, a Ruling on Debtor's Motion is Premature While Creditor's Motion to Transfer or Dismiss is Pending.**

Creditor filed his Motion to Transfer; or, in the Alterative, to Dismiss (Doc 48) on April 3, 2025, asking that this case be either transferred to the Bankruptcy Court for the Eastern District of Pennsylvania or dismissed. That Motion is currently scheduled for hearing on May 21, 2025, one week after the hearing on Debtor's motion to amend or convert. If this case is either transferred or dismissed, then any ruling on Debtor's motion or any other substantive motion would either unnecessarily bind the Pennsylvania Bankruptcy Court (in the event of transfer) or be unnecessary (in the event of dismissal). The interests of justice and judicial economy require that Motion be ruled upon before any other substantive motions in this proceeding.

40148503v1

Fed. R. Bankr. P. 1014 allows a Bankruptcy Court to "transfer the case to another district in the interest of justice or for the convenience of the parties." *See also* 11 U.S.C. § 1412. The "interest of justice" is analyzed under a "broad and flexible standard which must be applied on a case-by-case basis," *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990), with "the most important consideration [being] whether the requested transfer would promote the economic and efficient administration of the estate." *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979). One element of the economic administration of the estate courts have looked to is avoiding the need for repeating substantial work and expense in one district, requiring a "learning curve" to bring the case up to speed would be duplicative and expensive. *In re Lebbos*, No. BAO.EC-07-1163-JUNAM, 2007 WL 7540977, at *6 (B.A.P. 9th Cir. Nov. 14, 2007) (citing *In re Enron Corp.*, 284 B.R. 376, 395 (Bankr. S.D.N.Y. 2002).

Ruling on Debtor's Motion now, before a determination has been made as to whether the case will be transferred to the district where the Debtor's owner, purported most valuable asset, business records, and sole principal office are located or whether the case will be dismissed entirely, invites potential duplication of efforts and expense where none is necessary. If this Court decides at the upcoming hearing that this case should be transferred, then a ruling on Debtor's motion would restrain the new court's ability to efficiently and effectively rule on the matters before it. If this Court decides the Debtor's case should be dismissed, then a ruling on Debtor's motion would be moot and a waste of this Court's time and resources.

Creditor therefore asks that any ruling on Debtor's motion be continued until after a ruling on Creditor's Motion to Transfer; or, in the Alterative, to Dismiss.

**B. As with Debtor's Initial Filing of this Case, Debtor's Current Motion is a Tactical Filing to Avoid its Plan Filing Deadline Not an Earnest Attempt to Reorganize.**

The Debtor's actions in this case, from its initial filing to its most recent monthly operating report to its failure to meet its deadline to file a plan, paint a consistent picture of a Debtor who is not and cannot genuinely seek to reorganize and is instead only going through the motions of this

40148503v1

bankruptcy case to avoid an adverse summary judgment ruling in the Eastern District of Pennsylvania. As is argued more fully in Creditor's Motion to Transfer; or, in the Alterative, to Dismiss (Doc 48), the proper course of action is not to amend the Debtor's Subchapter V election but rather to dismiss this case entirely.

Although case law regarding the application of Subchapter V cases remains sparse, courts that have addressed the issue of shifting from Subchapter V to a "traditional" chapter 11 case have treated the analysis of whether allow the shift similarly to analyses of whether to allow conversion between other chapters. *See In re Nat'l Small Bus. All., Inc.*, 642 B.R. 345, 348–49 (Bankr. D.D.C. 2022). Here, the facts much more strongly support dismissal of the case, not conversion to a traditional chapter 11 case.

Bankruptcy Code Section 1112(b)(1) provides that "…on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."  Bankruptcy Code Section 1112(b)(4) includes a non-exclusive list of what constitutes "cause," including substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  The enumerated "causes," however are not exhaustive, and "the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *Pioneer Liquidating Corp. v. United States Trustee*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), aff'd *In re Consolidated Pioneer Mortg. Entities*, 264 F.3d 803 (9th Cir. 2001). "The bankruptcy court has broad discretion to determine what constitutes cause under 1112(b). The movant bears the burden of establishing by a preponderance of the evidence that cause exists." *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014) (citations omitted).

"A lack of good faith in filing a bankruptcy petition constitutes cause warranting dismissal under Section 1112(b)." *See Marsch v. Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). "In determining

whether a case was filed in the absence of good faith, courts may consider factors such as whether: (1) the Debtor has only one asset; (2) the Debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the Debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court." *In re Rosenblum*, 608 B.R. 529, 537 (Bankr. D. Nev. 2019); *St. Paul Self Storage Partnership v. Port Authority of the City of St. Paul*, 185 B.R. 580, 582–83 (B.A.P. 9th Cir. 1995). Additionally, filing a bankruptcy to delay a non-bankruptcy court proceedings may be indicative of bad faith. *See In re Silberkraus*, 253 B.R. 890, 905–06 (Bkrtcy. C.D. Cal. 2000) (citing several cases making such a finding).

Here, a lack of good faith is evidenced by, among other factors, the Debtor's filing on the eve of a summary judgment hearing merely as a litigation tactic, its lack of meaningful assets with value, the complete absence of any operations and cash flow, the failure to prepare and maintain financial statements, the failure to file tax returns, the forum shopping evidenced by the filing of this case in Nevada the same day an affiliate bankruptcy case was filed in the Eastern District of Pennsylvania, and the filing of this motion to avoid having to file a plan as required by Section 1189.

Further, the Debtor's cash on hand is diminishing with the Debtor is incurring debts in connection with its professionals. Negative cash flow is enough to establish a "substantial or continuing loss." *See In re USA Com. Mortg. Co.*, 452 F. App'x 715, 724 (9th Cir. 2011) (citing *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 515–16 (8th Cir. 2004)). This negative cash flow continued with the Debtor's March Monthly Operating Report (Doc 66).

Moreover, there is no reasonable likelihood of rehabilitation, as not only are there no operations, no employees, and no income, but also because the Debtor's supposed assets have little or no realizable value. "Rehabilitation as used in 11 U.S.C. Section 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis." *In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985) (internal punctuation omitted). Where reorganization or rehabilitation is unrealistic or futile, a chapter 11 case may be dismissed or converted even at its outset. *See In Re*

40148503v1

*Johnston*, 149 B.R. 158, 162 (9th Cir. B.A.P. 1992). "A debtor lacks a reasonable likelihood of rehabilitation where, for example, it lacks income, lacks operating funds, or lacks employees, capital, or "continuing revenue-generating activity." *In re Bay Area Material Handling, Inc.*, 76 F.3d 384, at *2 (9th Cir. 1996) (unpublished) (citations and internal punctuation omitted). *See also In re Hassen Imports P'ship*, No. BAP CC-13-1019-KIPAD, 2013 WL 4428508, at *14 (B.A.P. 9th Cir. Aug. 19, 2013). ("The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Wallace*, 2010 WL 378351 at *4 (Bankr. D. Idaho Jan. 26, 2010) (quotations and citations omitted)). Even if the Debtor wanted to meet its obligations under 11 U.S.C. § 1189(b) and had proposed a plan within 90 days of filings its petition, no plan of Debtor's could possibly "pay all allowed claims in full" (Doc 53 at 6) as Debtor says is its intention. The resources simply aren't there.

      Due to the Debtor's bad faith, and to prevent the debtor from simply refiling a bankruptcy case if this case is dismissed, a dismissal barring refiling for not less than one (1) year under 11 U.S.C. § 349(a) is warranted. "Section 349(a)4 is not ambiguous, and plainly provides that the bankruptcy court may, at its discretion and for cause, bar the discharge of existing debt. Inherent in this authority is the power to bar subsequent bankruptcy petitions that seek to discharge such debt." *Leavitt v. Soto*, 209 B.R. 935, 942 (9th Cir. BAP 1997), aff'd, 171 F.3d 1219 (9th Cir. 1999). The court "may 'dismiss a bankruptcy case with a bar preventing a debtor from re-filing in cases of abuse.... [T]he issue of the length of the bar is a matter for the Court's discretion.'" *Kulick v. Leisure Village Ass'n (In re Kulick)*, 2022 WL 17848939, at *3 (B.A.P. 9th Cir. Dec. 16, 2022) (quoting *In re Craighead*, 377 B.R. 648, 657 (Bankr. N.D. Cal. 2007)).

      The Debtor filed this case without a plan and without the ability to propose one. Once the deadline for a Subchapter V plan came, the Debtor filed this motion instead of a plan to keep this case going as long as it can. That's because the Debtor's goal was never to reorganize, only to avoid a bad ruling in its litigation with Creditor in Pennsylvania. A shift to chapter 11 will not change

40148503v1

anything. It would only drag out this proceeding further, wasting this Court's time and the money and resources of the Debtor's creditors.

## IV.  CONCLUSION

For the reasons set forth above, Creditor Mark L. Bunce asks this Court continue any ruling on Debtor's motion until after a ruling on Creditor's Motion to Transfer; or, in the Alterative, to Dismiss. In the event this Court does rule on the Debtor's Motion, the Motion should be denied, and the Debtor's case should be dismissed with a bar on refiling for not less than one year.

Respectfully submitted, this 30th day of April, 2025.

**MILLER & MARTIN PLLC**

/s/ Paul M. Alexander
Paul M. Alexander, Esq.  (*Admitted pro hac vice*)
Georgia Bar No. 009003
Michael P. Kohler, Esq. (*Admitted pro hac vice*)
Georgia Bar No. 427727
Regions Plaza, Suite 2100
1180 West Peachtree Street N.W.
Atlanta, Georgia 30309-3407
(404) 962-6100
Email:  Paul.Alexander@millermartin.com
Michael.Kohler@millermartin.com

*Lead Counsel for Creditor, Mark L. Bunce*

AND

**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CIA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email:  ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tfrey@carlyoncica.com

*Nevada Counsel for Creditor, Mark L. Bunce*

40148503v1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Carlyon Cica Chtd. and that, on the 30th day of April 2025, I caused to be served a true and correct copy of **MOTION TO TRANSFER VENUE; OR, IN THE ALTERNATIVE, TO DISMISS** in the following manner.

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

/s/ *Cristina Robertson*
An employee of Carlyon Cica Chtd.

40148503v1