LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 25-10024-abl |
| | Chapter 11 |
| VISUAL TECHNOLOGY INNOVATIONS, INC., | |
| | Disclosure Statement Hearing: |
| Debtor. | Date:   June 25, 2025 |
| | Time:  1:30 p.m. |

## [PROPOSED] DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

*Left margin vertical text:*

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ..................................................................................................1
II.     INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT........1
III.    GENERAL OVERVIEW OF THE PLAN ...........................................................2
        A.    General Overview. ..............................................................................2
        B.    Treatment of Unclassified Claims. ......................................................3
              1.    Administrative Claims. ..............................................................3
              2.    Priority Tax Claims. ..................................................................3
        C.    Class 1: Secured Claims. ....................................................................3
        D.    Class 2: Priority Non-Tax Claims. ......................................................4
        E.    Class 3: Unsecured Vendor Claims. ....................................................4
        F.    Class 4: Unsecured Litigation Claims. ................................................4
        G.    Class 5: Punitive Damages Claims. ....................................................4
        H.    Class 6: Equity Interests. ....................................................................4
        I.    Interest. ..............................................................................................5
IV.     SUMMARY OF VOTING PROCESS ...............................................................5
        A.    Who May Vote to Accept or Reject the Plan. ......................................5
        B.    Summary of Voting Requirements. ......................................................5
V.      INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11 CASE ...........6
        A.    The Stream and Technovative Chapter 11 Proceedings. ......................6
        B.    The Bunce Litigation. ........................................................................8
        C.    The Chapter 11 Case. ..........................................................................8
        D.    Mr. Rajan's Personal Bankruptcy. ......................................................9
        E.    The Trustee's New Litigation. ............................................................9
VI.     DETAILED DESCRIPTION OF THE PLAN ....................................................10
        A.    Means of Implementing the Plan. ......................................................10
              1.    Funding. ..................................................................................10
              2.    Revesting of Assets. ................................................................10
              3.    Ownership of the Reorganized Debtor ......................................10
              4.    Corporate Documentation. ......................................................10
              5.    Effectuation of Transactions. ..................................................11
              6.    Notice of Effectiveness. ..........................................................11
              7.    No Governance Action Required. ............................................11
              8.    Proposed Post-Effective Date Management of the Reorganized
                    Debtor. ....................................................................................11
        B.    Executory Contracts and Unexpired Leases. ......................................12
        C.    Manner of Distribution of Property Under the Plan. ..........................12
        D.    Conditions to Confirmation of the Plan. ............................................12
              1.    Conditions to Confirmation. ....................................................12
              2.    Conditions to Effectiveness. ....................................................12
              3.    Waiver of Conditions. ..............................................................12
VII.    RISK FACTORS ..........................................................................................13
        A.    The Debtor Has No Duty to Update. ..................................................13
        B.    Information Presented is Based on the Debtor's Books and Records and is
              Unaudited. ..........................................................................................13

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

| | | | |
|---|---|---|---|
| | C. | Projections and Other Forward-Looking Statements are Not Assured, and Actual Results Will Vary. | 13 |
| | D. | No Legal or Tax Advice is Provided to You by this Disclosure Statement. | 13 |
| | E. | No Admissions Made. | 13 |
| | F. | No Waiver of Right to Object or to Recover Transfers and Estate Assets. | 14 |
| | G. | Confirmation of the Plan is Not Assured. | 14 |
| | H. | The Effective Date Might Be Delayed or Never Occur. | 14 |
| | I. | No Representations Outside of this Disclosure Statement Are Authorized. | 14 |
| | J. | Effect of the Chapter 11 Case. | 14 |
| | | L. Effect of Proceedings in the Stream TV Bankruptcy Case. | 15 |
| VIII. | | POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS | 15 |
| | A. | Summary of Title to Property and Dischargeability. | 15 |
| | | 1. Vesting of Assets. | 15 |
| | | 2. Preservation of Avoidance Actions and Litigation Claims. | 15 |
| | | 3. Discharge. | 16 |
| | | 4. Binding Effect of Plan/Injunction. | 16 |
| | | 5. Exculpation. | 17 |
| | | 6. Injunction Protecting Exculpation. | 17 |
| | | 7. Injunction in Aid if Performance of the Plan. | 18 |
| | B. | Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee. | 18 |
| | C. | Certain Federal Income Tax Consequences. | 18 |
| IX. | | CONFIRMATION OF THE PLAN. | 19 |
| | A. | Confirmation of the Plan. | 19 |
| | B. | Objections to Confirmation of the Plan. | 19 |
| | | 1. Best Interest of Creditors and Liquidation Analysis. | 20 |
| | | 2. Feasibility. | 21 |
| | | 3. Accepting Impaired Class. | 22 |
| | | 4. Acceptance of Plan. | 22 |
| | | 5. Confirmation Over a Dissenting Class. | 22 |
| | C. | Allowed Claims. | 22 |
| | D. | Impaired Claims and Equity Interests. | 23 |
| | E. | Voting Procedures. | 23 |
| | | 1. Submission of Ballots. | 23 |
| | | 2. Incomplete Ballots. | 23 |
| | | 3. Withdrawal of Ballots. | 23 |
| | | 4. Questions and Lost or Damaged Ballots. | 23 |
| X. | | ALTERNATIVES TO THE PLAN | 24 |
| | A. | Debtor's Considerations. | 24 |
| | B. | Alternative Plans of Reorganization. | 24 |
| | C. | Liquidation Under Chapter 7. | 24 |
| XI. | | AVOIDANCE ACTIONS | 24 |
| XII. | | RECOMMENDATION AND CONCLUSION | 25 |

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

ii

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## I.      INTRODUCTION

On January 6, 2025 (the "Petition Date"), Visual Technology Innovations, Inc., a Nevada corporation, as debtor and debtor-in-possession (the "Debtor") filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada, Las Vegas (the "Bankruptcy Court"), thereby commencing Case No. 25-10024-abl (the "Chapter 11 Case"). The Debtor has prepared this Disclosure statement (the "Disclosure Statement")[1] in connection with the solicitation of votes on its *Plan of Reorganization* filed on May 9, 2025 (the "Plan") to treat the Claims of Creditors of the Debtor and the Holders of Equity Interests in Debtor. The various exhibits to this Disclosure Statement are incorporated into and are a part of this Disclosure Statement. The Plan is attached hereto as **Exhibit 1.** After having reviewed the Disclosure Statement and the Plan, any interested party desiring further information may contact:

LARSON & ZIRZOW, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170
Email: mzirzow@lzlawnv.com

Interested parties may also obtain further information from the Bankruptcy Court at its PACER website: http://www.nvb.uscourts.gov (PACER account required), or from the Clerk of Court, the United States Bankruptcy Court for the District of Nevada, Foley Federal Building and U.S. Courthouse, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101.

## II.     INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT

The objective of a chapter 11 case is the confirmation (*i.e.*, approval by the bankruptcy court) of a plan of reorganization for a debtor. A plan describes in detail (and in language appropriate for a legal contract) the means for satisfying the claims against, and equity interests in, a debtor. After a plan has been filed, the holders of such claims and equity interests that are Impaired (as defined in § 1124 of the Bankruptcy Code) are permitted to vote to accept or reject the plan. Before a debtor or other plan proponent can solicit acceptances of a plan, § 1125 of the Bankruptcy Code requires the debtor or other plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an informed judgment about the plan and whether they should accept or reject the plan.

The purpose of this Disclosure Statement is to provide sufficient information about the Debtor and the Plan to enable Creditors to make an informed decision in exercising their rights to accept or reject the Plan. After the appropriate Persons have voted on whether to accept or reject the Plan, there will be a hearing on the Plan to determine whether it should be confirmed. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Plan.

requirements of the Bankruptcy Code, including but not necessarily limited to § 1129 of the Bankruptcy Code. The Bankruptcy Court will also receive and consider a ballot summary that will present a tally of the votes of Classes accepting or rejecting the Plan cast by those entitled to vote. Once confirmed, the Plan will be treated essentially as a contract binding upon all Creditors, Holders of Equity Interests, and other parties-in-interest in the Chapter 11 Case.

**THIS DISCLOSURE STATEMENT IS NOT THE PLAN. FOR THE CONVENIENCE OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN WILL CONTROL.**

Unless otherwise specifically noted, the financial information in this Disclosure Statement has not been subject to audit. Instead, this Disclosure Statement was prepared from information compiled from records maintained in the ordinary course of the Debtor's business. The Debtor has attempted to be accurate in the preparation of this Disclosure Statement. Other than as stated in this Disclosure Statement, the Debtor has not authorized any representations or assurances concerning its operations or the value of its assets.

Therefore, you should scrutinize any information received from any third-party and you assume any risk resulting from reliance upon such unauthorized information. In deciding whether to accept or reject the Plan, you should therefore not rely on any information relating to the Debtor or the Plan other than that contained in this Disclosure Statement or in the Plan itself.

## III.    GENERAL OVERVIEW OF THE PLAN

### A.    General Overview.

The following is a general overview of the provisions of the Plan and is qualified in its entirety by reference to the provisions of the Plan itself. The Plan's treatment of each Class of Claims is summarized in the following table:

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Secured Claims | Impaired. Solicitation required. |
| Class 2 | Priority Non-Tax Claims | Unimpaired. No solicitation required. Deemed to accept. |
| Class 3 | Unsecured Vendor Claims | Impaired. Solicitation required. |
| Class 4 | Unsecured Litigation Claims | Unimpaired. No solicitation required. Deemed to accept. |
| Class 5 | Punitive Damages Claims | Impaired. Solicitation required. |
| Class 6 | Equity Interests | Impaired. No solicitation required. Deemed to reject. |

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

2

### B.    Treatment of Unclassified Claims.

#### 1.    Administrative Claims.

Pursuant to § 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Claims are not designated as a Class. The Holders of such unclassified Claims shall be paid in full under the Plan consistent with the requirements of § 1129(a)(9)(A) of the Bankruptcy Code and are not entitled to vote on the Plan. The amount of Administrative Claims incurred, but unpaid as of the Confirmation Hearing is estimated to be about $40,000 and is comprised of the estimated fees and costs of the law firm of Larson & Zirzow, LLC, the Debtor's bankruptcy counsel, and the fees and costs of the Subchapter V Trustee, Brian Shapiro. The foregoing total amount is an estimate only and, to date, no applications have been filed or orders have been entered by the Bankruptcy Court allowing these fees or costs, or the payment thereof, by the Debtor.

Each Allowed Administrative Claim shall be paid by the Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and the Reorganized Debtor shall agree upon.

#### 2.    Priority Tax Claims.

Each Allowed Priority Tax Claim, if any, shall be paid in full by the Reorganized Debtor as follows: (i) until payment in full, each Holder shall retain any and all Liens to the extent provided by applicable federal or state law applicable to such claim; (ii) payable commencing by the 15th day of the first month following the Effective Date, or the date on which an order allowing such Claim becomes a Final Order, whichever is later, or such other time as is agreed to by the holder of such Claim and the Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date; together with interest pursuant to § 511 of the Bankruptcy Code, and in all events paid in full within five (5) years following the Petition Date.

### C.    Class 1: Secured Claims.

Class 1 consists of any Allowed Secured Claims. Each holder of a Secured Claim shall be considered to be in its own separate subclass within Class 1 and each such subclass shall be deemed to be a separate Class for purposes of the Plan. Until payment in full of the Secured Claim, the Holder shall retain any and all Liens in and to its collateral.

The Holder of a Secured Claim shall be paid in full, with interest as set forth herein, payable in equal quarterly installments beginning by the fifteenth (15th) day of the first month following the Effective Date, and continuing by that same date of each calendar quarter thereafter, for a period of five (5) years, with any remaining balance, if any, due in full within five (5) years after the Effective Date. Class 1 is Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### D.      Class 2: Priority Non-Tax Claims.

Class 2 consists of all Priority Non-Tax Claims. Except to the extent that a Creditor with an Allowed Priority Non-Tax Claim agreed to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full by the Reorganized Debtor upon the latest of: (i) the first Business Day after the Effective Date; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and, prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, shall agree. Class 2 is Unimpaired under the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan and instead are deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.

### E.      Class 3: Unsecured Vendor Claims.

Class 3 consists of Allowed Unsecured Vendor Claims. Except to the extent that a Creditor with an Allowed Unsecured Vendor Claim agrees to less favorable treatment, Holders of Class 3 Allowed Claims shall be paid in full with interest as set forth herein by receiving their Pro Rata share of the sum of $104,000 per quarter, commencing on the 15th of the month following the Effective Date, and continuing at the same rate by such date each and every three (3) months thereafter until paid in full, and shall be paid in full within five (5) years of the Effective Date. Class 3 is Impaired under the Plan. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

### F.      Class 4: Unsecured Litigation Claims.

Class 4 consists of Allowed Unsecured Litigation Claims. Except to the extent that a Creditor with an Allowed Unsecured Litigation Claim agrees to less favorable treatment, Holders of Class 4 Allowed Claims shall be paid in full with interest upon the Effective Date. Class 4 is Unimpaired under the Plan. Holders of Allowed Class 4 Claims are not entitled to vote on the Plan and are deemed to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.

### G.      Class 5: Punitive Damages Claims.

Class 5 consists of Allowed Punitive Damages Claims. Except to the extent that a Creditor with an Allowed Punitive Damages Claim agrees to less favorable treatment, Holders of Class 5 Allowed Claims shall be paid in full with interest as set forth herein, by receiving their Pro Rata share of the sum of $156,000 per quarter, commencing on the 5th year anniversary following the Effective Date, and continuing at the same rate by the 1st of each month each and every three (3) months thereafter until paid in full, and shall be paid in full within fifteen (15) years of the Effective Date. Class 5 is Impaired under the Plan. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

### H.      Class 6: Equity Interests.

Class 6 consists of Holders of Equity Interests in the Debtor. Holders of Class 6 Equity Interests shall receive no distributions of cash pursuant to the Plan, and on the Effective Date, shall lose all legal interest, including their Equity Interests, in the Debtor. Class 6 is Impaired under the Plan. Holders of Class 6 Equity Interests are not entitled to vote to accept or reject the

Plan and instead are deemed to reject the Plan pursuant to § 1126(g) of the Bankruptcy Code.

**I.    Interest.**

Each Holder of an Allowed Claim shall also receive on account of such Holder's Allowed Claim payment of post-petition interest calculated at the Federal Judgment Rate or, if the Holder is entitled to a higher rate based on an applicable contract, statute, or other applicable law, then such rate as the Court may require at the Confirmation Hearing on the Plan consistent therewith. The Debtor is permitted to make pre-payments of principal of any claim at any time and without paying a pre-payment penalty or other similar charge, and such pre-payments shall reduce the amount of principal that the Debtor owes to such claim Holder.

## IV.    SUMMARY OF VOTING PROCESS

### A.    Who May Vote to Accept or Reject the Plan.

Generally, holders of allowed claims or equity interests that are "impaired" under a plan are permitted to vote on the plan. A claim is defined by both the Bankruptcy Code and a proposed reorganization plan to include a right to payment from a debtor. An equity security represents an ownership stake in a debtor, such as a share. In order to vote, a creditor must first have an allowed claim.

The solicitation of votes on the Debtor's Plan will be sought only from those Holders of Allowed Claims whose Claims are Impaired and which will receive property or rights under the Plan. As explained more fully below, to be entitled to vote, a Claim must be both "Allowed" and "Impaired."

### B.    Summary of Voting Requirements.

In order for the Plan to be confirmed, it must be accepted by at least one non-insider, impaired class of claims, excluding the votes of insiders. A class of claims is deemed to have accepted a plan when allowed votes representing at least two-thirds (2/3) in amount and a majority in number of the claims of the class actually voting cast votes in favor of a plan. A class of equity interests has accepted a plan when votes representing at least two-thirds (2/3) in amount of the outstanding equity interests of the class actually voting cast votes in favor of a plan.

The Debtor is soliciting votes from Holders of Allowed Claims in Class 1 (Secured Claims), Class 3 (Unsecured Vendor Claims), and Class 5 (Punitive Damages Claims). The Debtor has the right to supplement this Disclosure Statement as to additional Impaired Classes, if any.

**A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS MOST IMPORTANT. THE DEBTOR ASSERTS THAT THE TREATMENT OF CREDITORS UNDER THE PLAN IS THE BEST ALTERNATIVE FOR CREDITORS, AND THUS THE DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN DO VOTE IN FAVOR OF THE PLAN.**

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## V.    INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11 CASE

### A.    The Stream and Technovative Chapter 11 Proceedings.

Stream TV Networks Inc. ("Stream") and Technovative Media, Inc. ("Technovative" and together with Stream and their affiliates, the "Company") developed breakthrough glasses-free 3D display technology launched under the trade name Ultra-D™ ("Ultra-D"). Ultra-D is a proprietary combination of hardware and software that creates a natural, comfortable and immersive glasses-free 3D viewing experience. Stream also perfected its mass production optical bonding process, which is the precise gluing of proprietary 3D lenses to standard 2D video panels with sub-pixel accuracy. Stream commissioned the manufacture of specialized optical bonding equipment to meet its unique requirements, which bonding equipment is also an asset.

On March 15, 2023, Stream and Technovative filed their respective voluntary petitions for chapter 11 reorganization in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy Court"), Case Nos. 23-10763-djb and 23-10764-djb (jointly administered). The proceedings before the Pennsylvania Bankruptcy Court have been extensive, and thus the Debtor sets forth only a general summary, as a complete recitation of those proceedings is not intended hereby.

The Company's chapter 11 filings sought to neutralize a takeover scheme by a group of shareholders, some of whom held or hold convertible secured debt in Stream (the "Voided Takeover Attempt"). The takeover scheme consisted of a private foreclosure which the Delaware Supreme Court held was invalid because it was not authorized under Stream's corporate charter as required by long standing Delaware corporate law. Despite a clear directive by the Delaware Supreme Court to unwind any transactions that were part of the Voided Takeover Attempt, the case on remand languished for over nine months without even the basic return of assets.

The invalidated takeover scheme was executed through an unauthorized settlement agreement that moved all the assets of Stream into a "NewCo" named SeeCubic, Inc., a Delaware corporation ("SeeCubic"), and left all liabilities at Stream with no ability to repay its unsecured creditors. The takeover scheme also discriminated against certain Stream shareholders. Delaware law does not permit discrimination in treatment within classes of creditors or shareholders in settlement agreements.

The Company's business has been negatively impacted by the cloud of litigation initiated and prolonged by SeeCubic and associated parties, and the resulting attendant delays in SeeCubic's compliance with the Delaware Supreme Court mandate to return assets to the Company and cease using the Company's assets. During the pendency of the Company's bankruptcy, Stream generated renewed customer confidence which resulted in two significant purchase orders with Visual Semiconductor, Inc. ("VSI"). VSI is also a shareholder in Stream, and Mathu Rajan ("Mr. Rajan") founded it as well.

The Company's chapter 11 filings also facilitated and encouraged multiple financing sources to provide resources to the Company to finance the bankruptcy cases and to finance exit facilities and go-forward funding. Financing sources emerged which committed funding to pay off first lien debt, funding for production, and funding to provide a recovery for unsecured creditors and key executory contract holders essential to production and fulfillment of pending

purchase orders. Discussions with these financiers and stakeholders essential to go-forward operations were ultimately successful.

After extensive negotiations, on July 13, 2023, the Company, VSI, and others agreed to the terms of the restructuring set forth in the originally filed plan of organization to support the financing of the Company bankruptcy, the plan restructuring, the completion of purchase orders totaling $138,600,000, and plan sponsorship to assist in payment of claims and exit financing (the "Original Plan").

The Company was unable to promote the Original Plan or pursue its confirmation because the Court's attention and the Company's resources were consumed with ongoing motions practice and several months of hearings in late 2023 related to (i) attempts to have the bankruptcy cases dismissed or assigned to a chapter 11 trustee, and (ii) the Company's motion for a temporary restraining order against certain parties after they seized control of the Company's overseas subsidiaries which held valuable personnel and intellectual property. Shortly after the TRO was issued by the Pennsylvania Bankruptcy Court in January 2024, that Court appointed a Chapter 11 Trustee (the "Trustee") to oversee the Company as a result of alleged acrimony involving the parties. Thereafter, the Trustee made no effort to promote the Original Plan or explore its feasibility.

Instead, on June 6, 2024, the Pennsylvania Bankruptcy Court entered an order approving the Trustee's Settlement (the "9019 Order") with Hawk Investment Holdings, Ltd. ("Hawk"), which included, amongst others, the following deal terms: (i) Hawk received a $180 million secured claim, $150 million of which could be credit bid in a sale of the Company's assets; (ii) a $7.5 million carve out was established to pay administrative and general unsecured creditors; (iii) the Trustee would make SeeCubic a stalking horse in the sale of the Company's assets; (iv) qualified bids in that sales process would need to include a minimum $120 million cash component; and (v) if a bid were accepted over the stalking horse bid only 10% of that overbid would go to administrative or unsecured creditors until Hawk's $180 million claim was paid in full.

On September 30, 2024, the Trustee filed an expedited Motion to Approve the Proposed Bidding Procedures for Soliciting Bids for the Company's Assets (the "Bidding Procedures Motion"). In response to the Bidding Procedures Motion, VSI and others filed objections. A hearing was held on November 13, 2024, to consider the Bidding Procedures Motion. Following the hearing, the Pennsylvania Bankruptcy Court ordered the Trustee to submit revised bidding procedures, which the Court approved by order entered on November 20, 2024 (the "Bidding Procedures Order").

On December 9, 2024, the Pennsylvania Bankruptcy Court entered an order approving a sale pursuant to § 363 of the Bankruptcy Code of substantially all of Stream TV's assets to SeeCubic, and on January 8, 2025, entered a written opinion on the matter (the "Sale Order"). Thereafter, VSI and others also sought a stay pending appeal, which the Pennsylvania Bankruptcy Court denied by order entered on January 29, 2025 (the "Stay Order").

The Pennsylvania Bankruptcy Court's decisions regarding these and related matters in the Stream bankruptcy cases are currently the subject of various disputes and litigation in other

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

7

forums, including but not limited to multiple appeals taken by VSI, among others, currently pending before the U.S. District Court for the Eastern District of Pennsylvania (the "Pennsylvania District Court"), Case Nos. 24-6498-jmg, 24-6617-jmg, and 24-6397-jmg. The 2024 appeals, which have since been consolidated, involve challenges to the 9019 Order, the Bid Procedures Order, and the Sale Order. These 2024 appeals were fully briefed as of March 5, 2025. The Stay Order was appealed in 2025, and it is now pending in the Pennsylvania District Court as Case No. 25-0751-jmg, and briefing on it is nearing completion. It is unknown how and when the Pennsylvania District Court will rule on these appeals.

**B.    The Bunce Litigation.**

The Debtor filed for bankruptcy principally due to a pending collection litigation filed by Mark L. Bunce ("Mr. Bunce") in the Pennsylvania District Court, Case No. 2:23-cv-01740-KNS (the "Bunce Litigation"). Mr. Bunce had loaned $1,050,000 to VTI on an unsecured basis pursuant to various convertible notes in 2021. Mr. Bunce also sued Mr. Rajan personally in this case for alleged fraud. On October 17, 2024, Mr. Bunce filed a motion for partial summary judgment in the litigation, which was scheduled for hearing on January 7, 2025. Accordingly, to avoid potential disruption and loss that could result to the Debtor if Mr. Bunce were granted a judgment and enforced it, and in order to restructure its financial affairs for the benefit of all creditors and parties in interest, VTI filed its bankruptcy petition.

**C.    The Chapter 11 Case.**

On the Petition Date of January 6, 2025, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code and also elected to proceed under Subchapter V of chapter 11. Accordingly, the Debtor was authorized to continue operating its business and managing its financial affairs as a debtor in possession pursuant to § 1184 of the Bankruptcy Code. Brian D. Shapiro was appointed as Subchapter V Trustee in the Debtor's Chapter 11 Case.

On January 17, 2024, the Debtor filed its bankruptcy *Schedules* and *Statement of Financial Affairs* [ECF No. 13], which detailed that its principal asset was 52,562 shares in Stream. On that same date, the Debtor also filed its application to employ the law firm of Larson & Zirzow, LLC as its general reorganization counsel [ECF No. 14], which application the Bankruptcy Court approved by order entered on February 21, 2025 [ECF No. 27].

On January 19, 2025, the Office of the U.S. Trustee conducted the Debtor's Initial Debtor Interview, and on February 6, 2025, an initial § 341(a) first meeting of creditors, which meeting was continued various times before concluding on March 24, 2025 [ECF No. 45].

Shortly prior to the deadline to file claims in the case, the following four (4) proofs of claim were filed: (1) as estimated claim of $500 by the Internal Revenue Service [Claim No. 1]; (2) a claim by the law firm of Armstrong Teasdale LLP in the amount of $1,875,448.61 [Claim No. 2]; (3) a claim of Mr. Bunce in the amount of $6,854,271.60 [Claim No. 3] (the "Bunce Claim"); and (4) a claim by the law firm of Gainey McKenna & Egleston in the amount of $6,300 [Claim No. 4].

On April 3, 2025, Mr. Bunce filed a motion seeking to transfer venue of the case to the Pennsylvania Bankruptcy Court, which matter the Debtor has opposed, and which is set for

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

hearing on May 21, 2025.

In early April 2025, the Debtor was approached by the U.S. Securities and Exchange Commission (the "SEC") about entering into a stipulation agreeing that the deadline for the SEC to raise any challenge it may have, if any, pursuant to § 1141(d)(6)(A) of the Bankruptcy Code to challenge the Debtor's discharge, would be the deadline to object to confirmation of the Debtor's Plan. The SEC requested this agreement out of apparent concern regarding whether the deadline in Bankruptcy Rule 4007(c) applied to such a discharge challenge, and thus to avoid unnecessary litigation on the matter, including because the SEC had not made any decision whether it would even be making such a challenge, the Debtor agreed. Accordingly, on April 7, 2025, the parties entered into that stipulation, which the Court approved by order entered on April 9, 2025.

On April 8, 2025, the Debtor filed a motion seeking to revoke its election to proceed under Subchapter V due to its total debts apparently being in excess of the debt cap a pursuant to §§ 1182(1) and 101(51D) of the Bankruptcy Code. That same day, the Debtor also filed an amendment to its Voluntary Petition to remove the Subchapter V election. This Motion is set for hearing on May 14, 2025.

On April 16, 2025, the Debtor filed an objection to the Bunce Claim, seeking disallowance of Mr. Bunce's claim pursuant to § 502(b)(1) of the Bankruptcy Code to the extent it sought attorney's fees and costs and punitive damages, thus reducing the remaining amount of his claim to only its principal ($1,050,000) and interest ($278,724.66), and thus a remaining amount of about $1.328 million. This claim objection is also set for hearing on May 14, 2025.

### D.    Mr. Rajan's Personal Bankruptcy.

On January 6, 2025, Mr. Rajan filed for personal bankruptcy in the Pennsylvania Bankruptcy Court, Case No. 25-10042-djb, which was dismissed, but he again filed on January 28, 2025, Case No. 25-10356. On May 1, 2025, however, Mr. Rajan filed a praecipe for voluntary dismissal of his personal bankruptcy case, and thus his case should be dismissed soon.

### E.    The Trustee's New Litigation.

On April 30, 2025, the Trustee in the Company's bankruptcy cases filed a new complaint in the Pennsylvania Bankruptcy Court against Rembrandt 3D Holding Ltd. ("Rembrandt"), VSI, Mr. Rajan and his brother, Raja Rajan, and Brown and Michaels, P.C. the law firm representing Rembrandt. The new complaint asserts that it was filed to (a) avoid and invalidate any/all obligations and associated transfers in connection with a prepetition and two post-petition agreements among Stream and those defendants; (b) to avoid and recover an alleged unauthorized post-petition transfer from Stream to Defendant Brown & Michaels, P.C. in the amount of $50,000; (c) to challenge, object to and invalidate the proofs of claim filed Rembrandt; and (d) in the alternative, to subordinate the Rembrandt's claims below those of all other creditors of the Company's bankruptcy estates pursuant to §§ 510(b) and (c) of the Bankruptcy Code.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

9

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## VI.    DETAILED DESCRIPTION OF THE PLAN

### A.    Means of Implementing the Plan.

#### 1.    Funding.

The Debtor is a holding company that holds shares in Stream as its only asset and thus could only raise money to pay its creditors by either selling or leveraging those shares and/or obtaining funding from a third party. In the case at hand, the Debtor sought financing from VSI because (i) VSI believes the shares of Stream will eventually be proven to be very valuable, subject to the appeals pending before the Pennsylvania District Court, among other matters, and and (ii) VSI is leading the charge in those appeals in the Stream cases. VSI was and is the only entity placing value in the Debtor's primary asset. VSI, which has committed to funding the Plan, was acquired in April 2025 by a company publicly traded on the Vienna Stock Exchange (Wiener Börse). Through its new parent company, VSI has the required resources to meet all financial obligations of the Plan. Projections of VSI's contributions to fund the Plan are attached as **Exhibit 2**.

#### 2.    Revesting of Assets.

On and after the Effective Date, all of the Debtor's assets shall vest in the Reorganized Debtor, and the Reorganized Debtor shall continue to exist as a separate entity in accordance with applicable law. The Debtor's existing articles of incorporation and by-laws (as amended, supplemented, or modified) shall continue in effect for the Reorganized Debtor following the Effective Date, except to the extent that such documents are amended in conformance with the Plan or by proper corporate action after the Effective Date. As permitted by § 1123(a)(5)(B), on the Effective Date, all of the Debtor's Assets, including the Litigation Claims and right, title, and interest being assumed by the Reorganized Debtor in the assumed Executory Contracts shall vest in the Reorganized Debtor. Thereafter, the Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free and clear of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Except as specifically provided in the Plan or the Confirmation Order, as of the Effective Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests.

#### 3.    Ownership of the Reorganized Debtor

Upon the Effective Date, all Holders of Equity Interests in the Debtor shall lose legal interest in such holdings, including their Equity Interests. VSI, as Plan sponsor providing funds to support the Plan, shall own 100% of the Equity Interests in the Reorganized Debtor upon the Effective Date.

#### 4.    Corporate Documentation.

The Debtor's articles of incorporation and by-laws shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to § 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity interests, but only to the extent required by § 1123(a)(6) of the Bankruptcy Code.

5.      **Effectuation of Transactions.**

On and after the Effective Date, the Debtor's officers are authorized to issue, execute, deliver, and consummate the transactions contemplated by or described in the Plan in the name of and on behalf of the Debtor or the Reorganized Debtor, as the case may be, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, or any requirements of further action, vote, or other approval or authorization by any Person.

6.      **Notice of Effectiveness.**

When all of the steps for effectiveness have been completed, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential Holders of Administrative Claims known to the Reorganized Debtor (whether or not disputed), a notice of the Effective Date. The notice of the Effective Date shall include notice of the Administrative Claim Bar Date.

7.      **No Governance Action Required.**

As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (ii) the other matters provided for under or in furtherance of the Plan involving corporate action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the Debtor's officers.

8.      **Proposed Post-Effective Date Management of the Reorganized Debtor.**

From and after the Effective Date, the Reorganized Debtor shall continue to be managed by its pre-petition sole officer, director and shareholder, Mr. Rajan. On and after the Effective Date, Mr. Rajan, as the appropriate officer and director of the Reorganized Debtor, is authorized to issue, execute, deliver, and consummate the transactions contemplated by or described in the Plan in the name of and on behalf of the Reorganized Debtor without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, or any requirements of further action, vote, or other approval or authorization by any Person.

The continuation of management post-confirmation is consistent with the interests of Creditors, Holders of Equity Interests, and public policy pursuant to § 1129(a)(5) of the Bankruptcy Code because Mr. Rajan, as the sole officer and director in the Debtor, is intimately knowledgeable about Debtor's business and operations, and thus is uniquely qualified to effectuate the Plan and thereby maximize the value for all Creditors of the Estate. Mr. Rajan is well qualified and fully capable of continuing in such capacities post-confirmation on behalf of the Debtor and has the support of VSI to continue in such roles.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**B.      Executory Contracts and Unexpired Leases.**

All Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by the Reorganized Debtor on the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections of all Executory Contracts and Unexpired Leases pursuant to § 365 of the Bankruptcy Code, as of the Effective Date. All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than twenty-one (21) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

**C.      Manner of Distribution of Property Under the Plan.**

The Reorganized Debtor shall be responsible for making the distributions described in the Plan. Except as otherwise provided in the Plan or the Confirmation Order, the cash necessary for the Reorganized Debtor to make payments pursuant to the Plan may be obtained from VSI.

The Reorganized Debtor shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date and all Holders as of the Record Date of Equity Interests of the Debtor for purposes of mailing Distributions to them. The Reorganized Debtor may rely on the name and address set forth in the Debtor's Schedules and/or proofs of Claim and the ledger and records regarding Holders of Equity Interests as of the Record Date as being true and correct unless and until notified in writing.

**D.      Conditions to Confirmation of the Plan.**

**1.      Conditions to Confirmation.**

The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to the Debtor.

**2.      Conditions to Effectiveness.**

The following are conditions precedent to occurrence of the Effective Date: (1) The Confirmation Order shall be a Final Order, except that the Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order; (2) No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal; and (3) All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to the Debtor.

**3.      Waiver of Conditions.**

The Debtor, in its sole discretion, may waive any and all of the other conditions set forth in the Plan and specifically Sections 9.1 and 9.2 of the Plan without leave of or order of the Bankruptcy Court and without any formal action.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## VII. RISK FACTORS

In addition to risks discussed elsewhere in this Disclosure Statement, the Plan involves the following risks, which should be taken into consideration.

### A. The Debtor Has No Duty to Update.

The statements in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein. The delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless ordered to do so by the Bankruptcy Court.

### B. Information Presented is Based on the Debtor's Books and Records and is Unaudited.

While the Debtor has endeavored to present information fairly and accurately in this Disclosure Statement, there is no assurance that the Debtor's books and records upon which this Disclosure Statement is based are complete and accurate. The financial information contained herein has not been audited.

### C. Projections and Other Forward-Looking Statements are Not Assured, and Actual Results Will Vary.

Certain information in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and projections which may differ materially from actual future results. There are uncertainties associated with all assumptions, projections, and estimates, and they should not be considered assurances or guarantees of the amount of Claims in the various Classes that will be allowed. The allowed amount of Claims in each Class, as well as Administrative Claims, could be significantly more than projected, which in turn, could cause the value of Distributions to be reduced or to be tendered over a longer period of time than anticipated.

### D. No Legal or Tax Advice is Provided to You by this Disclosure Statement.

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Creditor or Holder of an Equity Interest should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters concerning his, her, or its Claim or Equity Interest.

### E. No Admissions Made.

Nothing contained herein shall constitute an admission of any fact or liability by any party (including the Debtor) or shall be deemed evidence of the tax or other legal effects of the Plan on the Debtor or on Holders of Claims or Equity Interests.

### F.       No Waiver of Right to Object or to Recover Transfers and Estate Assets.

A Creditor's vote for or against the Plan does not constitute a waiver or release of any claims or rights of the Debtor (or any other party in interest) to object to that Creditor's Claim, or recover any preferential, fraudulent, or other voidable transfer of Estate assets, regardless of whether any claims of the Debtor or its Estate is specifically or generally identified herein.

### G.       Confirmation of the Plan is Not Assured.

Confirmation requires, among other things, a finding by the Bankruptcy Court that it is not likely there will be a need for further financial reorganization and that the value of distributions to dissenting members of Impaired Classes of Creditors and Holders of Equity Interests would not be less than the value of distributions such Creditors and Holders of Equity Interests would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

Although the Debtor believes that the Plan will not be followed by a need for further financial reorganization and that dissenting members of Impaired Classes of Creditors and Holders of Equity Interests will receive distributions at least as great as they would receive in a liquidation under chapter 7, there can be no assurance that the Bankruptcy Court will conclude that this test has been met.

Although the Debtor believes the Plan satisfies all additional requirements for Confirmation, the Bankruptcy Court might not reach that conclusion. It is also possible that modifications to the Plan will be required for confirmation and that such modifications would necessitate a resolicitation of votes if the modifications are material.

### H.       The Effective Date Might Be Delayed or Never Occur.

There is no assurance as to the timing of the Effective Date or that it will occur. If the conditions precedent to the Effective Date have not occurred or been waived within the prescribed time frame, the Confirmation Order will be vacated. In that event, the Holders of Claims and Equity Interests would be restored to their respective positions as of the day immediately preceding the Confirmation Date, and the Debtor's obligations for Claims and Equity Interests would remain unchanged as of such day.

### I.       No Representations Outside of this Disclosure Statement Are Authorized.

No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with this Disclosure Statement should not be relied upon by you in arriving at your decision.

### J.       Effect of the Chapter 11 Case.

So long as the Chapter 11 Case continues, the Debtor's management will be required to spend a significant amount of time and effort dealing with the reorganization instead of focusing exclusively on business operations. Furthermore, as long as the Chapter 11 Case continues, the

14

Debtor will be required to incur substantial costs for professional fees associated with the proceedings.

### L. Effect of Proceedings in the Stream TV Bankruptcy Case.

The Debtor's proposed funding is coming from VSI, and thus any actions taken in the Stream bankruptcy cases against VSI may impact this case. Additionally, the value of the Debtor's shares in Stream is also contingent on the successful outcome of the currently pending appeals before the Pennsylvania District Court and the reversal of Stream's asset sale to SeeCubic.

## VIII. POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS

### A. Summary of Title to Property and Dischargeability.

#### 1. Vesting of Assets.

Subject to the provisions of the Plan, pursuant to Section 4.1 of the Plan and as permitted by § 1123(a)(5)(B) of the Bankruptcy Code, all of the Debtor's assets shall be transferred to the Reorganized Debtor on the Effective Date. As of the Effective Date, all such property shall be free and clear of all Liens, Claims, and Equity Interests except as otherwise provided herein. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property and compromise or settle any Claim without the supervision of or approval of the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

#### 2. Preservation of Avoidance Actions and Litigation Claims.

In accordance with § 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, all Litigation Claims shall be assigned and transferred to the Reorganized Debtor pursuant to Section 4.1 of the Plan. Notwithstanding the foregoing, on and after the Effective Date, the prosecution of the Litigation Claims lies in the sole and absolute discretion of the Reorganized Debtor.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth in this Disclosure Statement because the facts underlying such Litigation Claims are not currently known or sufficiently known by the Debtor. The failure to list any such unknown Litigation Claim in the Disclosure Statement is not intended to limit the rights of the Debtor or the Reorganized Debtor to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future. Furthermore, any potential net proceeds from Litigation Claims identified in the Disclosure Statement or any notice filed with the Bankruptcy Court, or which may subsequently arise or otherwise be pursued, are speculative and uncertain.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, the Debtor expressly reserves for its benefit, and for the benefit of the Reorganized Debtor, all Litigation

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan.

In addition, the Debtor expressly reserves for its benefit, and for the benefit of the Reorganized Debtor, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

**3.    Discharge.**

**In conjunction with § 1141 of the Bankruptcy Code, except as otherwise provided for herein, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever against the Debtor, and of the assets or properties of the Estate, including any interest accrued on such Claims from and after the petition date. Without limiting the generality of the foregoing, except as provided in the Confirmation Order, confirmation discharges the Debtor from all claims, or other debts that arose before the Effective Date, and all debts of the kind specified in § 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code; (ii) a Claim based on such debt is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan. Except as otherwise provided in the Plan, (i) on the Effective Date, all Claims against the Debtor that arose before the Effective Date shall be satisfied, discharged and released in full, and (ii) all persons shall be precluded from asserting against the Debtor or any of their assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date, as well as any debt of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, irrespective of whether (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code, (ii) such Claim is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of the claim has accepted the Plan. The discharge of the Debtor as set forth in the Plan shall not release or discharge the Debtor's Representatives from any personal obligations they may have to any Creditor under any personal guaranty or otherwise.**

**4.    Binding Effect of Plan/Injunction.**

**Upon the Effective Date, § 1141 of the Bankruptcy Code shall become applicable with respect to the Plan, and the Plan shall be binding on all parties to the fullest extent permitted by § 1141(a) of the Bankruptcy Code. In accordance with § 1141 of the Bankruptcy Code, all of the Debtor's property shall be vested in the Debtor free and clear of all claims, liens and interests of creditors and equity interest holders. Upon the Effective Date, all persons and entities shall be permanently enjoined by the Plan from (i) commencing or continuing any action, employing any process, asserting or undertaking**

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

16

an act to collect, recover, or offset, directly or indirectly, any claim, rights, causes of action, liabilities, or interests in or against any property distributed or to be distributed under the Plan, or vested in the Debtor, based upon any act, omission, transaction, or other activity that occurred before the Effective Date, (ii) creating, perfecting or enforcing any lien or encumbrance against any property distributed or to be distributed under the Plan other than as permitted under the Plan, and (iii) without limiting the generality of the foregoing, asserting any claims against the Debtor based on successor liability or similar or related theory, except to the extent a person or entity holds an allowed claim under the Plan and is entitled to a distribution and/or lien under the Plan in accordance with its terms, and to enforce its rights to distribution under the Plan. On and after the Effective Date, each holder of any claim against or interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere or otherwise hinder debtor from implementing the Plan, the Confirmation Order or any operative documents in accordance with the terms thereof. The discharge of the Debtor as set forth in the Plan shall not release or discharge the Debtor's Representatives from any personal obligations they may have to any Creditor pursuant to any personal guaranty or otherwise.

     **5.      Exculpation.**

     Neither the Debtor nor any of its Representatives shall have or incur any liability to any Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, for any act, omission, transaction or other occurrence arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct. The Debtor and its Representatives shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case. No Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Debtor or its Representatives, for any act, omission, transaction or other occurrence arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, except to the extent arising from fraud, gross negligence, or willful misconduct. Nothing in this Article shall be deemed an exculpation by the Debtor or its Representatives for any acts, omissions, transactions, events or other occurrences taking place prior to the Petition Date after the Effective Date.

     **6.      Injunction Protecting Exculpation.**

     All Holders of Claims against or Interests in the Debtor and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor or any of its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

against the Debtor or its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against the Debtor or its Representatives or against the property or interests in property the Debor or its Representatives, in respect of any potential liability for which exculpation is granted pursuant to the Plan.

**7.    Injunction in Aid of Performance of the Plan.**

Upon the Effective Date, all Holders of Claims against the Debtor, and any of their successors or assigns, shall be temporarily restrained and enjoined from pursuing collection or enforcement of such obligations against any co-obligor or guarantor of such Claim during the Debtor's performance of this Plan; provided, however, that: (a) any applicable statutes of limitations regarding any claims against any co-obligor or guarantor shall be tolled and preserved to same extent as existed as of the Effective Date; and (b) in the event of the Debtor's or the Reorganized Debtor's default under this Plan as to the affected Holder of such Claim, this injunction shall immediately terminate without further order of the Court.

**B.    Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee.**

Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, shall pay all quarterly fees payable to the U.S. Trustee consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6) and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. These fees accrue throughout the pendency of the Chapter 11 Case, until entry of a final decree. U.S. Trustee fees paid prior to confirmation of the Plan will be reported in operating reports required by §§ 704(8), 1106(a)(1), and 1107(a) of the Bankruptcy Code, as well as the U.S. Trustee Guidelines. All U.S. Trustee quarterly fees accrued prior to confirmation of the Plan will be paid on or before the Effective Date pursuant to § 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee fees accrued post-confirmation will be timely paid on a calendar quarterly basis and reported on post-confirmation operating reports. Final fees will be paid on or before the entry of a final decree in the Chapter 11 Case.

**C.    Certain Federal Income Tax Consequences.**

THE FOLLOWING SUMMARY DOES NOT CONSTITUTE EITHER A TAX OPINION OR TAX ADVICE TO ANY PERSON. NO REPRESENTATIONS REGARDING THE EFFECT OF IMPLEMENTATION OF THE PLAN ON INDIVIDUAL CREDITORS ARE MADE HEREIN OR OTHERWISE. RATHER, THE TAX DISCLOSURE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL CREDITORS ARE URGED TO CONSULT THEIR RESPECTIVE TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

Creditors, Holders of Equity Interests, and any Person affiliated with the foregoing are strongly urged to consult their respective tax advisors regarding the federal, state, local, and foreign tax consequences which may result from the confirmation and consummation of the Plan.

This Disclosure Statement shall not in any way be construed as making any representations regarding the particular tax consequences of the confirmation and consummation

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

of the Plan to any Person. This Disclosure Statement is general in nature and is merely a summary discussion of potential tax consequences and is based upon the Internal Revenue Code of 1986, as amended (the "IRC"), and pertinent regulations, rulings, court decisions, and treasury decisions, all of which are potentially subject to material and/or retroactive changes. Under the IRC, there may be federal income tax consequences to the Debtor, its Creditors, Holders of Equity Interests, and/or any Person affiliated therewith as a result of confirmation and consummation of the Plan.

Upon the confirmation and consummation of the Plan, the federal income tax consequences to Creditors and their affiliates arising from the Plan will vary depending upon, among other things, the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income using the cash or accrual method of accounting, whether the Creditor has taken a "bad debt" deduction with respect to its Claim, whether the Creditor received consideration in more than one tax year, and whether the Creditor is a resident of the United States. If a Creditor's Claim is characterized as a loss resulting from a debt, then the extent of the deduction will depend on whether the debt is deemed wholly worthless or partially worthless, and whether the debt is construed to be a business or nonbusiness debt as determined under the 26 U.S.C. § 166, and/or other applicable provisions of the Internal Revenue Code.

**CREDITORS SHOULD CONSULT THEIR TAX ADVISOR REGARDING THE TAX TREATMENT (INCLUDING FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES) OF THEIR RESPECTIVE ALLOWED CLAIMS. THIS DISCLOSURE IS NOT A SUBSTITUTE FOR TAX PLANNING AND SPECIFIC ADVICE FOR PERSONS AFFECTED BY THE PLAN.**

IX.    **CONFIRMATION OF THE PLAN**

A.    **Confirmation of the Plan.**

Pursuant to § 1128(a) of the Bankruptcy Code, the Bankruptcy Court will hold hearings regarding confirmation of the Plan at the U.S. Bankruptcy Court, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, on _____. To the extent necessary, the Bankruptcy Court will schedule additional hearing dates.

B.    **Objections to Confirmation of the Plan.**

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of a plan. Any objections to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections, and must be timely filed with the Bankruptcy Court and served upon counsel for Debtor at the following address:

LARSON & ZIRZOW, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170
Email: mzirzow@lzlawnv.com

For the Plan to be confirmed, the Plan must satisfy the requirements stated in § 1129 of the Bankruptcy Code. In this regard, the Plan must satisfy, among other things, the following requirements.

### 1.    Best Interest of Creditors and Liquidation Analysis.

Pursuant to § 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide that Creditors and Holders of Equity Interests will receive at least as much under the Plan as they would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each Holder of an Allowed Claim or Equity Interest of such Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class of Creditors or Equity Interests equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such holder in a chapter 7 bankruptcy proceeding.

Generally, to determine what Holders of Allowed Claims and Equity Interests in each impaired Class would receive if the Debtor were liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of the Debtor's Assets and properties in the context of a chapter 7 liquidation case, which for unsecured creditors would consist of the proceeds resulting from the disposition of the Assets of the Debtor, including the unencumbered Cash held by the Debtor at the time of the commencement of the liquidation case. Such Cash amounts would be reduced by the costs and expenses of the liquidation and by such additional Administrative Claims and Priority Claims as may result from the termination of the Debtor's business and the use of chapter 7 for the purpose of liquidation.

In a chapter 7 liquidation, Holders of Allowed Claims would receive distributions based on the liquidation of the non-exempt assets of the Debtor. Such assets would include the same assets being collected and liquidated under the Plan. However, the net proceeds from the collection of property of the Estate available for distribution to Creditors would be reduced by any commission payable to the chapter 7 trustee and the trustee's attorney's and accounting fees, as well as the administrative costs of the chapter 11 estate (such as the compensation for chapter 11 professionals). The Estate has already absorbed much of the cost of realizing upon the Debtor's Assets. In a chapter 7 case, the chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee to creditors, even though the Debtor has already incurred some of the expenses associated with generating those funds. Accordingly, there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtor because the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed from the Estate.

It is further anticipated that a chapter 7 liquidation would result in significant delay in the payment, if any, to Creditors. Among other things, a chapter 7 case could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

11 Case to chapter 7. Hence, a chapter 7 liquidation would not only delay distribution but would raise the prospect of additional claims that were not asserted in the Chapter 11 Case. Moreover, Claims that may arise in the chapter 7 case or result from the Chapter 11 Case would be paid in full from the Assets before the balance of the Assets would be made available to pay pre-chapter 11 Allowed Priority Claims, Allowed General Unsecured Claims, and Equity Interests.

The distributions from the Assets would be paid Pro Rata according to the amount of the aggregate Claims held by each Creditor. The Debtor believes that the most likely outcome under chapter 7 would be the application of the "absolute priority rule." Under that rule, no junior Creditor may receive any distribution until all senior Creditors are paid in full, with interest, and no Holder of an Equity Interest may receive any distribution until all Creditors are paid in full.

As set forth in the Liquidation Analysis annexed hereto as **Exhibit 3**, the Debtor has determined that confirmation of the Plan will provide each Holder of a Claim in an Impaired Class with no less of a recovery than he/she/it would receive if the Debtor were liquidated under a chapter 7. The Liquidation Analysis sets forth Debtor's best estimates as to value and recoveries in the event that the Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code and the Debtor's Assets are liquidated.

In a chapter 7 case, the chapter 7 trustee must liquidate the Debtor's assets and distribute the proceeds thereof to holders of allowed claims. The change in management, however, would hinder the chapter 7 trustee's ability to maximize the sales price for the assets and business. Additionally, there would be substantial fees and costs owing to a chapter 7 trustee's counsel and a commission pursuant to § 328 of the Bankruptcy Code owing to the chapter 7 trustee for their efforts in such a liquidation process as well. As a result, the payment in full over time with interest as proposed in the Plan is thus not less than what those secured creditors would obtain if the entire business were liquidated in chapter 7, and thus the Plan satisfies the Best Interest Test.

Thus, the Debtor strongly encourages all Impaired Classes to vote in favor of confirmation of the Plan.

## 2.    Feasibility.

The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test"). For the Plan to meet the Feasibility Test, the Bankruptcy Court must find by a preponderance of the evidence that the Debtor will possess the resources necessary to meet its obligations under the Plan. As demonstrated by the previous discussion of the Debtor's financial condition, the Debtor's operations generate sufficient cash flow to meet its payment obligations under the Plan.

Furthermore, as demonstrated by the Debtor's Projections, the Debtor will be able to satisfy its obligations under the Plan. As a result of the foregoing, the Debtor is confident that it can establish, and that the Bankruptcy Court will find, that the Plan is feasible within the meaning of § 1129(a)(11) of the Bankruptcy Code.

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### 3. Accepting Impaired Class.

Since various Classes of Claims are impaired under the Plan, for the Plan to be confirmed, the Plan must be accepted by at least one impaired Class of Claims (not including the votes of insiders of the Debtor).

### 4. Acceptance of Plan.

For an impaired Class of Claims to accept the Plan, those representing at least two-thirds (2/3) in amount and a majority (1/2) in number of the Allowed Claims who voted in that Class must be cast for acceptance of the Plan.

### 5. Confirmation Over a Dissenting Class.

If there is less than unanimous acceptance of the Plan by Impaired Classes of Claims, the Bankruptcy Court nevertheless may confirm the Plan at the Debtor's request. Section 1129(b) of the Bankruptcy Code provides that if all other requirements of § 1129(a) of the Bankruptcy Code are satisfied and if the Bankruptcy Court finds that: (i) the Plan does not discriminate unfairly; and (ii) the Plan is fair and equitable with respect to the rejecting Class(es) of Claims or Equity Interests impaired under the Plan, the Bankruptcy Court may confirm the Plan despite the rejection of the Plan by dissenting impaired Class of Claims or Equity Interests.

The Debtor will request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any Impaired Class of Claims that does not vote to accept the Plan. The Debtor believes that the Plan satisfies all of the statutory requirements for Confirmation, that the Debtor has complied with or will have complied with all the statutory requirements for Confirmation of the Plan, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the statutory requirements for Confirmation.

### C. Allowed Claims.

You have an Allowed Claim if: (i) you or your representative timely file a proof of Claim and no objection has been filed to your Claim within the time period set for the filing of such objections; (ii) you or your representative timely filed a proof of Claim and an objection was filed to your Claim upon which the Bankruptcy Court has ruled and Allowed your Claim; (iii) your Claim is listed by the Debtor in its Schedules or any amendments thereto (which are on file with the Bankruptcy Court as a public record) as liquidated in amount and undisputed and no objection has been filed to your Claim; or (iv) your Claim is listed by the Debtor in its Schedules as liquidated in amount and undisputed and an objection was filed to your Claim upon which the Bankruptcy Court has ruled to Allow your Claim.

Under the Plan, the deadline for filing objections to Claims is ninety (90) calendar days following the Effective Date. If your Claim is not an Allowed Claim, it is a Disputed Claim, and you will not be entitled to vote on the Plan unless the Bankruptcy Court temporarily or provisionally allows your Claim for voting purposes pursuant to Bankruptcy Rule 3018. If you are uncertain as to the status of your Claim or Equity Interest or if you have a dispute with the Debtor, you should check the Bankruptcy Court record carefully, including the Debtor's

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Schedules, and you should seek appropriate legal advice. The Debtor and its professionals cannot advise you about such matters.

### D.    Impaired Claims and Equity Interests.

Impaired Claims and Equity Interests include those whose legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the Creditor or Equity Interest Holder, or if the full amount of the Allowed Claims will not be paid under the Plan. Holders of Claims which are not impaired under the Plan are deemed to have accepted the Plan pursuant to § 1126 of the Bankruptcy Code and the Debtor need not solicit the acceptances of the Plan of such unimpaired Claims. As such, only Holders of Claims in impaired Classes 1, 2, and 4-7 under the Plan are entitled to vote.

### E.    Voting Procedures.

#### 1.    Submission of Ballots.

All Creditors entitled to vote will be sent a Ballot, together with instructions for voting, a copy of this approved Disclosure Statement, and a copy of the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot that was sent with this Disclosure Statement. You should complete your Ballot and return it as follows:

LARSON & ZIRZOW, LLC
Attn: Matthew C. Zirzow, Esq.
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
(702) 382-1170
Email: mzirzow@lzlawnv.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS LISTED ABOVE BY _____, 2025 at 5:00 p.m. (Pacific Time).**

#### 2.    Incomplete Ballots.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will be counted as a vote to accept the Plan.

#### 3.    Withdrawal of Ballots.

A Ballot may not be withdrawn or changed after it is cast unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to permit the change.

#### 4.    Questions and Lost or Damaged Ballots.

If you have any questions concerning these voting procedures, if your Ballot is damaged or lost, or if you believe you should have received a Ballot but did not receive one, you may

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

contact Debtor's counsel as listed above regarding the submission of Ballots.

## X. ALTERNATIVES TO THE PLAN

### A. Debtor's Considerations.

The Debtor believes that the Plan provides Creditors with the best and most complete form of recovery available. As a result, the Debtor believes that the Plan serves the best interests of all Creditors and parties-in-interest in the Chapter 11 Case. The Debtor believes not only that the Plan, as described herein, fairly adjusts the rights of various Classes of Creditors and enables the Creditors to realize the greatest sum possible under the circumstances, but also that rejection of the Plan in favor of some theoretical alternative method of reconciling the Claims and Equity Interests of the various Classes will not result in a better recovery for any Class.

### B. Alternative Plans of Reorganization.

Under § 1121 of the Bankruptcy Code, a debtor has an exclusive period of one hundred twenty (120) days and an additional vote solicitation period of sixty (60) days from the entry of the order for relief during which time, assuming that no trustee has been appointed by the Bankruptcy Court, only a debtor may propose and confirm a plan. In the case at hand, the Debtor file its Plan prior to the expiration of the exclusive period.

### C. Liquidation Under Chapter 7.

If a plan cannot be confirmed, a Chapter 11 case may be converted to a case under chapter 7, in which a chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to its creditors and Holders of Equity Interests in accordance with the priorities established by the Bankruptcy Code.

As previously stated, the Debtor believes that a liquidation under chapter 7 would result in a substantially reduced recovery of funds by its Creditors because of: (i) additional Administrative Expenses involved in the appointment of a chapter 7 trustee for the Debtor and attorneys and other professionals to assist such chapter 7 trustee; (ii) additional expenses and Claims, some of which may be entitled to priority, which would be generated during the chapter 7 liquidation; and (iii) the possibility that certain senior secured creditors would seek and be entitled to relief from the automatic stay in such chapter 7 bankruptcy case, thereby likely resulting in a foreclosure sale of the Center, which will reduce the recovery of the Debtor's other Creditors and Equity Interest Holders. Accordingly, the Debtor believes that all Holders of Claims will receive a smaller distribution under a chapter 7 liquidation.

## XI. AVOIDANCE ACTIONS

A bankruptcy trustee (or the entity as debtor-in-possession) may avoid as a preference a transfer of property made by a debtor to a creditor on account of an antecedent debt while a debtor was insolvent, where that creditor receives more than it would have received in a liquidation of the entity under chapter 7 of the Bankruptcy Code had the payment not been made, if: (i) the payment was made within ninety (90) days before the date the Chapter 11 Case were commenced; or (ii) if the creditor is found to have been an "insider" as defined in the Bankruptcy

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

24

Code, within one (1) year before the commencement of the Chapter 11 Case. A debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of the case.

A bankruptcy trustee (or the entity as debtor-in-possession) may avoid as a fraudulent transfer a transfer of property made by a debtor within two (2) years (and under applicable Nevada law, four (4) years) before the date the Chapter 11 Case were commenced if: (i) debtor received less than a reasonably equivalent value in exchange for such transfer; and (ii) was insolvent on the date of such transfer or became insolvent as a result of such transfer, such transfer left debtor with an unreasonably small capital, or debtor intended to incur debts that would be beyond debtor's ability to pay as such debts matured. In addition, this reachback may be extended further to within one (1) year of reasonable discovery of the facts underlying the transfer and its actual fraudulent nature.

The Debtor does not believe that there are any pre-petition transactions which may be avoidable and recoverable under various theories in chapter 5 of the Bankruptcy Code. Regardless, out of an abundance of caution, the Debtor thus expressly reserves its right to commence any appropriate actions pursuant to chapter 5 of the Bankruptcy Code.

## XII.    RECOMMENDATION AND CONCLUSION

In the Debtor's opinion, the Plan provides the best possible recovery for all Creditors as a whole, and therefore they recommend that all Creditors who are entitled to vote on the Plan VOTE TO ACCEPT THE PLAN.

Dated: May 9, 2025.

VISUAL TECHNOLOGY INNOVATIONS, INC.,
a Nevada corporation:

By:  */s/ Mathu Rajan*
      Mathu Rajan, President

Prepared and submitted:

By:  */s/ Matthew C. Zirzow*
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT 1

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. 25-10024-abl |
| | Chapter 11 |
| VISUAL TECHNOLOGY INNOVATIONS, INC., | |
| | Confirmation Hearing: |
| Debtor. | Date:  To be set |
| | Time:  To be set |

## [PROPOSED] DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

# TABLE OF CONTENTS

Page

1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ...........1
   1.1 Definitions.................................................................................................................1
      1.1.1 Administrative Claim.......................................................................................1
      1.1.2 Administrative Claim Bar Date. .....................................................................1
      1.1.3 Allowed. ..........................................................................................................1
      1.1.4 Assets. .............................................................................................................2
      1.1.5 Avoidance Actions. .........................................................................................2
      1.1.6 Bankruptcy Code. ...........................................................................................2
      1.1.7 Bankruptcy Court. ..........................................................................................2
      1.1.8 Bankruptcy Rules. ..........................................................................................2
      1.1.9 Bar Date. .........................................................................................................2
      1.1.10 Business Day..................................................................................................2
      1.1.11 Cash. ..............................................................................................................2
      1.1.12 Causes of Action. ..........................................................................................3
      1.1.13 Chapter 11 Case. ...........................................................................................3
      1.1.14 Claim. ............................................................................................................3
      1.1.15 Claim Objection Deadline. ...........................................................................3
      1.1.16 Claims Register. ............................................................................................3
      1.1.17 Class. .............................................................................................................3
      1.1.18 Confirmation. ................................................................................................3
      1.1.19 Confirmation Date. ........................................................................................3
      1.1.20 Confirmation Hearing. ..................................................................................3
      1.1.21 Confirmation Order. ......................................................................................3
      1.1.22 Creditor. ........................................................................................................3
      1.1.23 Cure. ..............................................................................................................4
      1.1.24 Debtor. ...........................................................................................................4
      1.1.25 Disallowed Claim ..........................................................................................4
      1.1.26 Disclosure Statement. ...................................................................................4
      1.1.27 Disputed. .......................................................................................................4
      1.1.28 Distribution. ..................................................................................................4
      1.1.29 Distribution Record Date. .............................................................................4
      1.1.30 Effective Date. ...............................................................................................4
      1.1.31 Equity Interest. ..............................................................................................4
      1.1.32 Estate. ............................................................................................................5
      1.1.33 Executory Contract. .......................................................................................5
      1.1.34 Federal Judgment Rate. .................................................................................5
      1.1.35 File. ................................................................................................................5
      1.1.36 Final Decree. .................................................................................................5
      1.1.37 Final Order. ...................................................................................................5
      1.1.38 General Unsecured Claim. .............................................................................5
      1.1.39 Holder. ...........................................................................................................5
      1.1.40 Impaired. .......................................................................................................5
      1.1.41 Insider. ...........................................................................................................5

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

i

1.1.42 Lien. ...................................................................................6
1.1.43 Litigation Claims. ..................................................................6
1.1.44 Person. .................................................................................6
1.1.45 Petition Date. .........................................................................6
1.1.46 Plan. ....................................................................................6
1.1.47 Priority Non-Tax Claim. ...........................................................6
1.1.48 Priority Tax Claims. .................................................................6
1.1.49 Professional. ..........................................................................6
1.1.50 Professional Fees. ...................................................................6
1.1.51 Professional Fee Claim. ...........................................................6
1.1.52 Proof of Claim. ......................................................................6
1.1.53 Pro Rata. ...............................................................................6
1.1.54 Punitive Damages Claims. ........................................................7
1.1.55 Record Date. .........................................................................7
1.1.56 Reorganized Debtor. ...............................................................7
1.1.57 Representatives. .....................................................................7
1.1.58 Schedules. ............................................................................7
1.1.59 Secured. ...............................................................................7
1.1.60 Unexpired Lease. ....................................................................7
1.1.61 Unimpaired. ...........................................................................7
1.1.62 Unsecured Claim. ...................................................................7
1.1.63 Unsecured Vendor Claims. .......................................................7
1.1.64 Unsecured Litigation Claims. ....................................................7
1.1.65 U.S. Trustee Fees. ..................................................................8
1.2 Computation of Time. ....................................................................8
1.3 Rules of Interpretation. ..................................................................8
1.4 Exhibits and Plan Schedules. ..........................................................8
2. TREATMENT OF UNCLASSIFIED CLAIMS .........................................8
2.1 General. .....................................................................................8
2.2 Treatment of Administrative Claims. ..................................................8
    2.2.1    Generally. ..........................................................................8
    2.2.2    Requests for Payment. ..........................................................8
2.3 Priority Tax Claims. .......................................................................9
3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ..........9
3.1 Overview. ...................................................................................9
3.2 Summary of Classification. ..............................................................10
3.3 Class 1: Secured Claims. ................................................................10
    3.3.1 Claims in Class. ...................................................................10
    3.3.2 Treatment. ..........................................................................10
    3.3.3 Impairment and Voting. .........................................................10
3.4 Class 2: Priority Non-Tax Claims. .....................................................10
    3.4.1 Claims in Class. ...................................................................10
    3.4.2 Treatment. ..........................................................................10
    3.4.3 Impairment and Voting. .........................................................10
3.5 Class 3: Unsecured Vendor Claims. ...................................................10
    3.5.1 Claims in Class. ...................................................................10

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

3.5.2 Treatment. ............................................................................................................10
3.5.3 Impairment and Voting. ..........................................................................................11
3.6 Class 4: Unsecured Litigation Claims ........................................................................11
3.6.1 Claims in Class. ........................................................................................................11
3.6.2 Treatment. ................................................................................................................11
3.6.3 Impairment and Voting. ..........................................................................................11
3.7 Class 5: Punitive Damages Claims. ............................................................................11
3.7.1 Claims in Class. ........................................................................................................11
3.7.2 Treatment. ................................................................................................................11
3.7.3 Impairment and Voting. ..........................................................................................11
3.8 Class 6: Equity Interests. ............................................................................................11
3.8.1 Claims in Class. ........................................................................................................11
3.8.2 Treatment. ................................................................................................................11
3.8.3 Impairment and Voting. ..........................................................................................11
3.9 Elimination of Vacant Classes. ...................................................................................11
3.10 Interest. ........................................................................................................................12
3.11 Prepayment. ................................................................................................................12
4. PLAN IMPLEMENTATION .............................................................................................12
4.1 Plan Implementation Occurring on Effective Date. ................................................12
4.1.1 Reorganized Debtor. ................................................................................................12
4.1.2 Prohibition of Non-Voting Equity Securities. .....................................................12
4.2 Notice of Effectiveness. ...............................................................................................12
4.3 Operations and Management of Reorganized Debtor. ..........................................12
4.4 Default Cure Period. ....................................................................................................12
4.5 Exemption from Certain Transfer Taxes and Further Transactions. ...................13
4.6 Final Decree. .................................................................................................................13
4.7 Effectuating Documents, Further Transactions. .....................................................13
5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................14
5.1 Executory Contracts and Unexpired Leases. ...........................................................14
6. MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN .....................14
6.1 Distributions on Account of Claims Allowed as of the Effective Date. .................14
6.2 Manner of Payment Under the Plan. ........................................................................14
6.3 Escheat. ..........................................................................................................................14
6.4 Delivery of Distributions. ...........................................................................................14
6.4.1 Record Date for Distributions. ...............................................................................14
6.4.2 Delivery of Distributions in General. .....................................................................14
6.4.3 Returned Distributions. ...........................................................................................15
6.4.4 Disputed Distributions. ...........................................................................................15
6.4.5 Setoffs. .......................................................................................................................15
6.4.6 Withholding Taxes. ...................................................................................................16
7. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...........................................16
7.1 Objection to and Resolution of Claims. ....................................................................16
7.2 Payments. .......................................................................................................................16
7.3 Contingent Claims. .......................................................................................................16
7.4 Estimation of Claims. ...................................................................................................16

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

8. RESERVATION OF RIGHTS ................................................................................17
    8.1 Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not Occur.17
    8.2 No Admissions or Waiver. ..........................................................................17
    8.3 Term of Bankruptcy Injunction or Stays. ...................................................17

9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE.........17
    9.1 Conditions to Confirmation. ......................................................................17
    9.2 Conditions to Occurrence of Effective Date. ............................................17

10. EFFECT OF CONFIRMATION OF PLAN ........................................................18
    10.1 Discharge. ................................................................................................18
    10.2 Binding Effect of Plan/Injunction. ..........................................................18
    10.3 Exculpation. ............................................................................................19
    10.4 Injunctions. .............................................................................................19
        10.4.1 Injunction Protecting Exculpation. ..................................................19
        10.4.2 Injunction in Aid of Performance of the Plan. .................................20
    10.5 Modification of Debt Instruments. ...........................................................20
    10.6 Revesting of Assets. ................................................................................20
    10.7 Preservation of Causes of Action. ...........................................................20
    10.8 No Limitation on Effect of Confirmation. ...............................................21

11. RETENTION OF JURISDICTION ...................................................................21
    11.1 Retention of Jurisdiction. .........................................................................21
    11.2 Occurrence of Effective Date. ..................................................................22
    11.3 Failure of Bankruptcy Court to Exercise Jurisdiction. .............................22

12. MISCELLANEOUS PROVISIONS ...................................................................23
    12.1 Modifications to Plan. ..............................................................................23
    12.2 Notices. ....................................................................................................23
    12.3 Headings. .................................................................................................24
    12.4 Non-Severability of Plan Provisions. .......................................................24
    12.5 Governing Law. .......................................................................................24
    12.6 Successor and Assigns. ............................................................................24
    12.7 Modification of Payment Terms. ..............................................................25
    12.8 Effectuating Documents; Further Transactions. .......................................25
    12.9 Exemption from Transfer Taxes. ..............................................................25
    12.10 Post Confirmation Conversion or Dismissal. ..........................................25
    12.11 Cramdown. .............................................................................................25
    12.12 Fees and Reporting to the United States Trustee. ....................................26
    12.13 Post-Confirmation Quarterly Reports and Fees. ......................................26
    12.14 Entire Agreement. ...................................................................................26

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

iv

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Visual Technology Innovations, Inc., a Nevada corporation, as debtor and debtor-in-possession, proposes this plan of reorganization for the resolution of its outstanding Claims and Equity Securities. All Creditors, Equity Interest Holders, and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor's history, assets, historical financial data, and for a summary and analysis of the Plan and certain related matters. All Holders of Claims against and Equity Securities in the Debtor are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 12 to the Plan, the Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify the Plan one or more times before its substantial consummation.

# 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1 Definitions.** For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following terms shall have the meanings specified below:

**1.1.1 Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Case allowed pursuant to §§ 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Dates and through the Effective Date of preserving the Estate and operating the business of the Debtor, including but not limited to wages, salaries, or commissions for services, and payments for goods and services; (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Allowed Professional Fees, pursuant to §§ 327, 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges payable pursuant to 28 U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case, pursuant to §§ 503(b)(3), (4), and (5) of the Bankruptcy Code or otherwise.

**1.1.2 Administrative Claim Bar Date.** The deadline for filing requests for allowance and payment of Administrative Claims, including Professional Fees, which shall be thirty (30) days after the Effective Date.

**1.1.3 Allowed.** With reference to any Claim or Equity Interest with respect to the Debtor: (a) any Claim against or Equity Interest in the Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Equity Interest has been Filed; (b) any Claim or

1

Equity Interest allowed (i) under the Plan, (ii) by Final Order, or (iii) as to which the liability of the Debtor and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in the Plan, the Confirmation Order or other order of the Bankruptcy Court. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

**1.1.4 Assets.** All of the assets, property, interests, real and personal, tangible and intangible, wherever situated, of the Debtor, as they exist as of the Effective Date.

**1.1.5 Avoidance Actions.** Any actions commenced, or that may be commenced before or after the Effective Date, pursuant to §§ 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code.

**1.1.6 Bankruptcy Code.** The Bankruptcy Reform Act of 1978, title 11 of the United States Code, as amended from time to time, as applicable to these Chapter 11 Case, as now in effect or hereafter amended.

**1.1.7 Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 151.

**1.1.8 Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case, and the general, local and chambers rules and orders of the Bankruptcy Court, all as now in effect or hereafter amended.

**1.1.9 Bar Date.** In the case of non-governmental Creditors, March 17, 2025, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims including Claims asserted pursuant to § 503(b)(9) of the Bankruptcy Code, except with respect to Administrative Claims, Claims arising from the rejection of any Executory Contracts and Unexpired Leases, and Claims that were scheduled by the Debtor as undisputed, non-contingent, and unliquidated. In the case of governmental Creditors, July 7, 2025, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims.

**1.1.10 Business Day.** A day, other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.1.11 Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately

available funds, or other cash equivalents.

**1.1.12 Causes of Action.** Any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**1.1.13 Chapter 11 Case.** The case under chapter 11 of the Bankruptcy Code involving the Debtor, having case number 25-10024-abl, including all adversary proceedings pending in connection therewith.

**1.1.14 Claim.** Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.15 Claim Objection Deadline.** The date that is 180 days from the Effective Date for all Claims, except for Claims for which a specific objection deadline has been set forth elsewhere in the Plan, which deadline may be extended by the Reorganized Debtor upon request after notice and a hearing.

**1.1.16 Claims Register.** The official register of Claims and Equity Interests maintained by the Debtor.

**1.1.17 Class.** A category of Holders of Claims or Equity Interests as classified in the Plan.

**1.1.18 Confirmation.** The entry by the Bankruptcy Court of the Confirmation Order on the docket in the Chapter 11 Case.

**1.1.19 Confirmation Date.** The date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.20 Confirmation Hearing.** The hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to § 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.1.21 Confirmation Order.** The order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**1.1.22 Creditor.** Any Holder of a Claim, whether or not such Claim is Allowed.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**1.1.23 Cure.** The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to § 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such Executory Contract or Unexpired Lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from the Debtor's failure to perform any non-monetary obligation as set forth in §§ 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount that compensates the Holder of such a Claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court on or before the deadline ordered by the Court for the filing of objections to the Disclosure Statement.

**1.1.24 Debtor.** Visual Technology Innovations, Inc., a Nevada corporation, as debtor in this Chapter 11 Case.

**1.1.25 Disallowed Claim.** Any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

**1.1.26 Disclosure Statement.** The disclosure statement that relates to the Plan, including all exhibits and schedules thereto, as may be amended, supplemented or modified from time to time, that is prepared and distributed in accordance with, among other matters, §§ 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.27 Disputed.** A Claim (including any Administrative Claim, Priority Claim or Secured Claim) or Equity Interest, or any portion thereof, that is: (a) listed in the Schedules as disputed, contingent, or unliquidated; or (b) subject to an objection interposed by the Debtor, Reorganized Debtor, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved.

**1.1.28 Distribution.** Any distribution made by the Debtor or the Reorganized Debtor to the Holders of Allowed Claims or Allowed Equity Interests pursuant to the terms of the Plan.

**1.1.29 Distribution Record Date.** The Confirmation Date unless the Bankruptcy Court establishes a different date in the Confirmation Order.

**1.1.30 Effective Date.** The latest to occur of: (i) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (i) the first (1st) Business Day on which all of the conditions set forth in Section 9 have been satisfied or waived.

**1.1.31 Equity Interest.** Includes the following (i) any equity or other ownership interest in the Debtor, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, warrants, options, or other ownership rights or rights to

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

purchase or receive additional shares of stock in the Debtor, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in the Debtor giving rise to any Claim or Equity Interest, (ii) equity interests, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto, and (iii) partnership, limited liability company or similar interest.

**1.1.32 Estate.** The estate of the Debtor that was created by the commencement of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

**1.1.33 Executory Contract.** A contract to which the Debtor is a party that is subject to assumption or rejection pursuant to § 365 of the Bankruptcy Code.

**1.1.34 Federal Judgment Rate.** The rate of interest on judgments as provided for by 28 U.S.C. § 1961 as of the Confirmation Date.

**1.1.35 File.** To file with the Bankruptcy Court in the Chapter 11 Case.

**1.1.36 Final Decree.** An order of the Bankruptcy Court closing the Chapter 11 Case pursuant to § 350 of the Bankruptcy Code.

**1.1.37 Final Order.** An order, judgment or other decree of the Bankruptcy Court and entered on the docket of such court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, stay or rehearing has expired and no appeal or petition for certiorari, review, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, stay or rehearing has been filed, and (i) such appeal or petition for certiorari, review, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, stay or rehearing is pending; *provided, however*, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to §§ 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

**1.1.38 General Unsecured Claim.** A Claim that is not secured by a charge against or interest in property in which the Estate has an interest and is not an unclassified Claim, Administrative Claim, Secured Claim, Priority Tax Claim or Priority Non-Tax Claim. General Unsecured Claims shall also include all Claims arising under § 502(g) of the Bankruptcy Code.

**1.1.39 Holder.** Any Person holding a Claim against or Equity Interest in the Debtor.

**1.1.40 Impaired.** Means impairment within the meaning of § 1124 of the Bankruptcy Code.

**1.1.41 Insider.** Shall include any person having such meaning as set forth in §

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

5

101(31) of the Bankruptcy Code.

**1.1.42 Lien.** A charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.1.43 Litigation Claims.** All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtor or the Estate may have against any person.

**1.1.44 Person.** Any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, unincorporated organization or government, governmental agency, governmental unit or political subdivision, or any other entity.

**1.1.45 Petition Date.** January 6, 2025, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing the Chapter 11 Case.

**1.1.46 Plan.** This chapter 11 plan of reorganization, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

**1.1.47 Priority Non-Tax Claim.** Any Claim, other than an Administrative Claim or Priority tax Claim, that is entitled to priority under § 507(a) of the Bankruptcy Code.

**1.1.48 Priority Tax Claims.** Any Claim that is entitled to priority under §§ 502(i) or 507(a)(8) of the Bankruptcy Code.

**1.1.49 Professional.** A Person: (a) employed pursuant to a Bankruptcy Court order in accordance with §§ 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to §§ 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to § 503(b) of the Bankruptcy Code.

**1.1.50 Professional Fees.** All reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

**1.1.51 Professional Fee Claim.** Any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to §§ 326, 327, 328, 330 or 331 of the Bankruptcy Code and the terms of the Plan.

**1.1.52 Proof of Claim.** A Proof of Claim Filed against the Debtor in the Chapter 11 Case.

**1.1.53 Pro Rata.** With respect to an amount of Cash or other consideration to be

**LARSON & ZIRZOW, LLC**
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

**1.1.54 Punitive Damages Claims.** Any Unsecured Claim arising from punitive or exemplary damages under applicable law, and which are requested or awarded to punish egregious conduct, and which are in addition to any actual or compensatory damages.

**1.1.55 Record Date.** The Confirmation Date for the purpose of determining the Holders of Equity Interests.

**1.1.56 Reorganized Debtor.** The Debtor, or any successor thereto, by merger, consolidation or otherwise, as reorganized pursuant to the Plan on or after the Effective Date.

**1.1.57 Representatives.** With respect to a given Person, its past and current directors, officers, shareholders, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

**1.1.58 Schedules.** The schedules of assets and liabilities, the list of Holders of Interests and the statements of financial affairs Filed by the Debtor under § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

**1.1.59 Secured.** When referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to § 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a secured Claim.

**1.1.60 Unexpired Lease.** A lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection pursuant to § 365 of the Bankruptcy Code.

**1.1.61 Unimpaired.** With respect to a Claims or Interest, leaving unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

**1.1.62 Unsecured Claim.** Any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court as a Priority Tax Claim or Priority Non-Tax Claim.

**1.1.63 Unsecured Vendor Claims.** Any Non-Priority Unsecured Claims other than Unsecured Litigation Claims and Punitive Damages Claims, and only to the extent it is for services provided as a vendor to the Debtor.

**1.1.64 Unsecured Litigation Claims.** Any Unsecured Claim arising out of active

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

litigation pending as of the Petition Date, and only to the extent it is for an award of actual or compensatory damages under applicable law, and excluding any Punitive Damages Claims.

**1.1.65 U.S. Trustee Fees.** Any fees payable pursuant to 28 U.S.C. § 1930. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.3 Rules of Interpretation.** Any term used in the Plan that is not defined in the Plan, either in this Article or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply, including that the terms "includes," "shall include," and "including" are not limiting; (c) reference to a pleading, request, or document being "Filed" means duly and properly filed with the Bankruptcy Court as reflected on the docket of the Bankruptcy Court; (d) all exhibits and schedules to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when they are Filed; (e) any service or notice provided for in the Plan shall be provided at the addresses specified herein; (f) except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the exhibits provide otherwise, the rights, duties and obligations under the Plan shall be governed, construed and enforced in accordance with the laws of the State of Nevada; and (g) to the extent a reference or description in the Disclosure Statement is inconsistent with the terms or conditions of the Plan, the terms and conditions of the Plan shall govern over the reference contained in the Disclosure Statement.

**1.4 Exhibits and Plan Schedules.** All exhibits and schedules attached to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## 2. <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

**2.1 General.** Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor set forth in this Article 2 are not designated as Classes. The Holders of such Claims are not entitled to vote on the Plan. The treatment of the Claims set forth below is consistent with the requirements of § 1129(a)(9)(A) of the Bankruptcy Code.

**2.2 Treatment of Administrative Claims.**

**2.2.1    Generally.** Each Allowed Administrative Claim shall be paid by the Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and the Reorganized Debtor shall agree upon. For the avoidance of doubt, notwithstanding anything to the contrary herein, the Debtor or the Reorganized Debtor, as the case may be, hereby reserve any and all defenses or offsets to challenge any Administrative Claims.

**2.2.2    Requests for Payment.** All requests for payment of Administrative

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

8

Claims against the Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor and the Reorganized Debtor. All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and the Reorganized Debtor may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.3  Priority Tax Claims.** Each Allowed Priority Tax Claim, if any, will be paid in full by the Reorganized Debtor as follows: (i) until payment in full, each Holder shall retain any and all Liens to the extent provided by applicable federal or state law applicable to such claim; (ii) payable commencing by the 15th day of the first month following the Effective Date, or the date on which an order allowing such Claim becomes a Final Order, whichever is later, or such other time as is agreed to by the holder of such Claim and the Debtor prior to the Effective Date or the Reorganized Debtor after the Effective Date; (iii) payable in twelve (12) equal quarterly installments over four (4) years, together with interest pursuant to § 511 of the Bankruptcy Code, and in all events paid in full within five (5) years following the Petition Date.

# 3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1 Overview.** Pursuant to the Plan and in accordance with § 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Securities (except Administrative Claims and Priority Tax Claims) are placed in the Classes described below. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under the Plan, except as otherwise provided under the Plan, nothing shall affect the rights and legal and equitable defenses of the Debtor and the Reorganized Debtor regarding such Claims classified as Unimpaired under the Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

[Rest of page intentionally left blank]

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

### 3.2 Summary of Classification.

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Secured Claims | Impaired. Solicitation required. |
| Class 2 | Priority Non-Tax Claims | Unimpaired. No solicitation required. |
| Class 3 | Unsecured Vendor Claims | Impaired. Solicitation required. |
| Class 4 | Unsecured Litigation Claims | Unimpaired. No solicitation required. |
| Class 5 | Punitive Damages Claims | Impaired. Solicitation required. |
| Class 6 | Equity Interests | Impaired. No solicitation required. |

### 3.3 Class 1: Secured Claims.

**3.3.1 Claims in Class.** Class 1 consists of any Allowed Secured Claims. Each holder of an Allowed Secured Claim shall be considered to be in its own separate subclass within Class 1 and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

**3.3.2 Treatment.** Until payment in full of the Secured Claim, the Holder shall retain any and all Liens in and to its collateral. The Holder of a Secured Claim shall be payable in equal quarterly installments beginning by the fifteenth (15th) day of the first month following the Effective Date, and continuing by that same date of each calendar quarter thereafter, for a period of five (5) years, with any remaining balance, if any, due in full within five (5) years after the Effective Date.

**3.3.3 Impairment and Voting.** Creditors in Class 1 are Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.

### 3.4 Class 2: Priority Non-Tax Claims.

**3.4.1 Claims in Class.** Class 2 consists of all Priority Non-Tax Claims.

**3.4.2 Treatment.** Except to the extent that a Creditor with an Allowed Priority Non-Tax Claim agreed to less favorable treatment, each Allowed Priority Non-Tax Claim shall be paid in full by the Reorganized Debtor upon the latest of: (i) the first Business Day after the Effective Date; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and, prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, shall agree.

**3.4.3 Impairment and Voting.** Creditors in Class 2 are Unimpaired under the Plan. Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

### 3.5 Class 3: Unsecured Vendor Claims.

**3.5.1 Claims in Class.** Class 3 consists of Allowed Unsecured Vendor Claims.

**3.5.2 Treatment.** Except to the extent that a Creditor with an Allowed Unsecured Vendor Claim agrees to less favorable treatment, Holders of Class 3 Allowed Claims shall be

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

paid in full within interest as set forth herein by receiving their Pro Rata share of the sum of $104,000 per quarter, commencing on the 15th of the month following the Effective Date, and continuing at the same rate by such date each and every three (3) months thereafter until paid in full, and all events shall be paid in full within five (5) years of the Effective Date.

**3.5.3 Impairment and Voting.** Class 3 is Impaired under the Plan. Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### 3.6 Class 4: Unsecured Litigation Claims.

**3.6.1 Claims in Class.** Class 4 consists of Allowed Unsecured Litigation Claims.

**3.6.2 Treatment.** Except to the extent that a Creditor with an Allowed Unsecured Litigation Claim agrees to less favorable treatment, Holders of Class 4 Allowed Claims shall be paid in full within interest upon the Effective Date.

**3.6.3 Impairment and Voting.** Class 4 is Unimpaired under the Plan. Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan.

### 3.7 Class 5: Punitive Damages Claims.

**3.7.1 Claims in Class.**  Class 5 consists of Allowed Punitive Damages Claims.

**3.7.2 Treatment.**  Except to the extent that a Creditor with an Allowed Punitive Damages Claim agrees to less favorable treatment, Holders of Class 5 Allowed Claims shall be paid in full within interest, by receiving their Pro Rata share of the sum of $156,000 per quarter, commencing on the 5th year anniversary following the Effective Date, and continuing at the same rate by the 1st of each month each and every three (3) months thereafter until paid in full, and all events shall be paid in full within fifteen (15) years of the Effective Date.

**3.7.3 Impairment and Voting.**  Class 5 is Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### 3.8 Class 6: Equity Interests.

**3.8.1 Claims in Class.** Class 6 consists of Holders of Equity Interests.

**3.8.2 Treatment.** Holders of Class 6 Equity Interests shall not receive or retain anything under the Plan, and on the Effective Date, all Equity Interests in the Debtor shall be cancelled.

**3.8.3 Impairment and Voting.** Class 6 is Impaired under the Plan. Holders of Class 6 Equity Interests are not entitled to vote to accept or reject the Plan, and instead are deemed to reject the Plan pursuant to § 1126(g) of the Bankruptcy Code.

**3.9 Elimination of Vacant Classes.** Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

**3.10 Interest.** Each Holder of an Allowed Claim shall also receive on account of such Holder's Allowed Claim payment of post-petition interest calculated at the Federal Judgment Rate or, if the Holder is entitled to a higher rate based on an applicable contract, statute, or other applicable law, then such rate as the Court may require at the Confirmation Hearing on the Plan consistent therewith.

**3.11 Prepayment.** The Debtor is permitted to make pre-payments of principal of any claim at any time and without paying a pre-payment penalty or other similar charge including, and such pre-payments shall reduce the amount of principal that the Debtor owes.

## 4. PLAN IMPLEMENTATION

**4.1 Plan Implementation Occurring on Effective Date.** On the Effective Date, without any further action by the Debtor or the Reorganized Debtor, all of the Debtor's assets shall vest in the Reorganized Debtor, subject to the terms and conditions of the Plan, and the following events shall occur in the following sequence:

**4.1.1 Reorganized Debtor.** On and after the Effective Date, the Reorganized Debtor shall continue to exist as a separate entity in accordance with applicable law, and shall retain all licenses necessary to its operations that existed as of the Petition Date. The Debtor's existing articles of incorporation or organization, bylaws, corporate resolutions, operating agreement (as amended, supplemented or modified, and as applicable) will continue in effect for the Reorganized Debtor following the Effective Date, except to the extent such documents are amended in conformance with the Plan or by proper corporate action after the Effective Date.

**4.1.2 Prohibition of Non-Voting Equity Securities.** The Reorganized Debtor's articles of incorporation and/or bylaws shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, which shall include, among other matters, pursuant to § 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity interests, to the extent required by the Bankruptcy Code.

**4.2 Notice of Effectiveness.** When all of the steps contemplated by Article 6.1 have been completed, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon all Creditors and all potential holders of Administrative Claims known to the Reorganized Debtor (whether or not disputed), a Notice of Effective Date of Plan. The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**4.3 Operations and Management of Reorganized Debtor.** From the Effective Date, the Debtor's present sole officer and director, Mathu Rajan, shall continue to manage and operate the Debtor's business, and with full authority to make all decisions and take all actions on behalf of the Reorganized Debtor to effectuate the Plan. VSI shall own and control all of the shares of the Reorganized Debtor.

**4.4 Default Cure Period.** Notwithstanding anything to the contrary in any pre-petition loan documents, in the event of an asserted default or event of default under the Plan, the

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

affected creditor shall be required to provide the Reorganized Debtor with written notice of such default or event of default. Upon receipt of such written notice, the Reorganized Debtor shall thereafter be permitted fifteen (15) Business Days to cure any monetary event of default, or, in the event of a non-monetary event of default, thirty (30) days; *provided, however*, that with respect to a non-monetary default or event of default, if the Reorganized Debtor uses commercially reasonable efforts to begin curing such default within such thirty (30) day period and should the default not be cable of being cured within such cure period notwithstanding such efforts, then the Reorganized Debtor shall be permitted a reasonable time thereafter to cure. In the event of any default or event of default that remains uncured after expiration of the applicable cure period(s) herein, then the affected shall then be required to file a motion with the Bankruptcy Court for a determination regarding whether a default has occurred and the Debtor shall be entitled to contest the occurrence or continuation of such alleged default. Only after the Bankruptcy Court has heard and determined the occurrence and continuation of an event of default shall the moving creditor be then permitted to exercise any rights or remedies at law or under the Refinanced Loan Documents.

**4.5 Exemption from Certain Transfer Taxes and Further Transactions.** Pursuant to § 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estate property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**4.6  Final Decree.** Notwithstanding otherwise applicable law, the Chapter 11 Case shall be closed and a Final Decree entered as soon as possible after the occurrence of the Effective Date, unless and until: (a) all adversary proceedings and contested matters pending before the Bankruptcy Court have been resolved by a Final Order; and (c) all Claims have either: (i) become Allowed Claims and payments have begun in accordance with the treatment to be given such Allowed Claim pursuant to the Plan; (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim, in accordance with the terms of the Plan; (iii) been assumed by the Debtor, or (iv) reinstated.

**4.7  Effectuating Documents, Further Transactions.** On and after the Effective Date, the Debtor is authorized to and may issue, execute, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, as applicable, without the need for any approvals, authorizations, or consents.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

## 5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 Executory Contracts and Unexpired Leases.** All Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by the Reorganized Debtor on the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections of all Executory Contracts and Unexpired Leases pursuant to § 365 of the Bankruptcy Code, as of the Effective Date. All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than twenty-one (21) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

## 6. MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN

**6.1 Distributions on Account of Claims Allowed as of the Effective Date.** Distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, except as otherwise set forth in the Plan, or on the first date thereafter as is reasonably practicable.

**6.2 Manner of Payment Under the Plan.** Distributions of Cash to be made by the Debtor or the Reorganized Debtor pursuant to the Plan shall be made, at the discretion of the Debtor or the Reorganized Debtor, by check drawn on a bank account, ACH, or by wire transfer.

**6.3 Escheat.** Holders of Allowed Claims shall have three (3) months from the check date to negotiate Distribution checks issued by the Debtor or the Reorganized Debtor under the terms of the Plan, otherwise payment on such checks may at the Debtor's or the Reorganized Debtor's sole discretion be stopped and the funds shall escheat to the Debtor or the Reorganized Debtor and shall be promptly distributed to the Debtor or the Reorganized Debtor in accordance with § 347 of the Bankruptcy Code.

**6.4 Delivery of Distributions.**

**6.4.1 Record Date for Distributions.** On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Reorganized Debtor shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer forms contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**6.4.2 Delivery of Distributions in General.** Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Debtor or the Reorganized Debtor:

**6.4.2.1** In accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004;

14

**6.4.2.2** To the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor have been notified in writing of a change of address);

**6.4.2.3** To the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim;

**6.4.2.4** To the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor or the Reorganized Debtor has not received a written notice of change of address; or

**6.4.2.5** To any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.

**6.4.3 Returned Distributions.** In the case of Distributions to the Holders of Allowed Claims that are returned to the Debtor or the Reorganized Debtor due to an incorrect or incomplete address, the Debtor or the Reorganized Debtor shall retain any such returned Distribution in a segregated account established by the Debtor or the Reorganized Debtor to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Debtor or the Reorganized Debtor (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Debtor or the Reorganized Debtor (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under the Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed to the Debtor.

**6.4.4 Disputed Distributions.** In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under the Plan, the Debtor or the Reorganized Debtor, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves. Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Debtor or the Reorganized Debtor shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

**6.4.5 Setoffs.** The Debtor or the Reorganized Debtor may, but shall not be required to, set-off against any Distributions to be made pursuant to the Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that the Debtor may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim the Debtor may have, or may have had, against such Holder.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**6.4.6 Withholding Taxes.** The Debtor or the Reorganized Debtor shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with § 346 of the Bankruptcy Code.

## 7. PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**7.1 Objection to and Resolution of Claims.** Except as to applications for allowance of compensation and reimbursement of expenses under §§ 330, 331 and/or 503 of the Bankruptcy Code, the Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims. On and after the Effective Date, the Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtor and, on and after the Effective Date, the Reorganized Debtor, shall file all objections to Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one (1) year after the Effective Date or such later date as may be approved by the Bankruptcy Court.

**7.2 Payments.** Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, the Debtor shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

**7.3 Contingent Claims.** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**7.4 Estimation of Claims.** The Debtor shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

## 8. RESERVATION OF RIGHTS

**8.1 Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not Occur.** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan or the Effective Date does not ultimately occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against or any Person; (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Person.

**8.2 No Admissions or Waiver.** Without limiting the generality of any similar provision in the Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan or in the Disclosure Statement shall be deemed an admission by the Debtor or any Person with respect to any matter set forth herein. If Confirmation of the Plan or the Effective Date does not ultimately occur, no statement contained in the Plan or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case against the Debtor. The Debtor reserves any and all of its rights as against all Persons and Entities in the event Confirmation of the Plan or the Effective Date does not ultimately occur.

**8.3 Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Chapter 11 Case under §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## 9. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**9.1 Conditions to Confirmation.** As a condition precedent to the Confirmation of the Plan, the Confirmation Order shall be in form and substance reasonably acceptable to the Debtor.

**9.2 Conditions to Occurrence of Effective Date.** The following are conditions precedent to the occurrence of the Effective Date:

**9.2.1.**  The Confirmation Order shall be a Final Order, except that the Debtor reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

**9.2.2.**  No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**9.2.3.**  All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to the Debtor;

**9.2.4.** Sufficient Cash and other assets are set aside, reserved and withheld to make the distributions required by the Bankruptcy Code and the Plan.

**9.2.5.** The Debtor, in its sole discretion, may waive the Final Order condition in Section 9.2.1 above at any time from and after the Confirmation Date. In that event, the Debtor will be entitled to render any or all performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived; including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

## 10. EFFECT OF CONFIRMATION OF PLAN

**10.1 Discharge. In conjunction with § 1141 of the Bankruptcy Code, except as otherwise provided for herein, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever against the Debtor, and of the assets or properties of the Estate, including any interest accrued on such Claims from and after the petition date. Without limiting the generality of the foregoing, except as provided in the Confirmation Order, confirmation discharges the Debtor from all claims, or other debts that arose before the Effective Date, and all debts of the kind specified in § 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code; (ii) a Claim based on such debt is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan. Except as otherwise provided in the Plan, (i) on the Effective Date, all Claims against the Debtor that arose before the Effective Date shall be satisfied, discharged and released in full, and (ii) all persons shall be precluded from asserting against the Debtor or any of their assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date, as well as any debt of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, irrespective of whether (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code, (ii) such Claim is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of the claim has accepted the Plan. The discharge of the Debtor as set forth in the Plan shall not release or discharge the Debtor's Representatives from any personal obligations they may have to any Creditor under any personal guaranty or otherwise.**

**10.2 Binding Effect of Plan/Injunction. Upon the Effective Date, § 1141 of the Bankruptcy Code shall become applicable with respect to the Plan and the Plan shall be binding on all parties to the fullest extent permitted by § 1141(a) of the Bankruptcy Code. In accordance with § 1141 of the Bankruptcy Code, all of the Debtor's property shall be vested in the Debtor free and clear of all claims, liens and interests of creditors and equity interest holders. Upon the Effective Date, all persons and entities shall be permanently enjoined by the Plan from (i) commencing or continuing any action, employing any process, asserting or undertaking an act to collect, recover, or offset, directly or indirectly, any claim, rights, causes of action, liabilities, or interests in or against any property**

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

distributed or to be distributed under the Plan, or vested in the Debtor, based upon any act, omission, transaction, or other activity that occurred before the Effective Date, (ii) creating, perfecting or enforcing any lien or encumbrance against any property distributed or to be distributed under the Plan other than as permitted under the Plan, and (iii) without limiting the generality of the foregoing, asserting any claims against the Debtor based on successor liability or similar or related theory, except to the extent a person or entity holds an allowed claim under the plan and is entitled to a distribution and/or lien under the plan in accordance with its terms, and to enforce its rights to distribution under the Plan. On and after the Effective Date, each holder of any claim against or interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere or otherwise hinder debtor from implementing the Plan or the Confirmation Order in accordance with the terms thereof. The discharge of the Debtor as set forth in the Plan shall not release or discharge the Debtor's Representatives from any personal obligations they may have to any Creditor pursuant to any personal guaranty or otherwise.

10.3 **Exculpation.** Neither the Debtor nor any of its Representatives shall have or incur any liability to any Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, for any act, omission, transaction or other occurrence arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct. The Debtor and its Representatives shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case. No Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Debtor or its Representatives, for any act, omission, transaction or other occurrence arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, except to the extent arising from fraud, gross negligence, or willful misconduct. Nothing in this Article shall be deemed an exculpation by the Debtor or its Representatives for any acts, omissions, transactions, events or other occurrences taking place prior to the Petition Date after the Effective Date.

10.4 **Injunctions.**

10.4.1 **Injunction Protecting Exculpation.** All Holders of Claims against or Interests in the Debtor and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor or any of its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its Representatives in respect of any potential liability for which exculpation is granted pursuant to the Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against the Debtor or its Representatives or against the property or interests in property the Debor or its

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

Representatives, in respect of any potential liability for which exculpation is granted pursuant to the Plan.

**10.4.2 Injunction in Aid of Performance of the Plan.** Upon the Effective Date, all Holders of Claims against the Debtor, and any of their successors or assigns, shall be temporarily restrained and enjoined from pursuing collection or enforcement of such obligations against any co-obligor or guarantor of such Claim during the Debtor's performance of this Plan; *provided*, *however*, that: (a) any applicable statutes of limitations regarding any claims against any co-obligor or guarantor shall be tolled and preserved to same extent as existed as of the Plan's Effective Date; and (b) in the event of the Debtor's or the Reorganized Debtor's default under this Plan as to the affected Holder of such Claim, this injunction shall immediately terminate without further order of the Court.

**10.5 Modification of Debt Instruments.** On the Effective Date, all instruments evidencing indebtedness of the Debtor held by Holders of Claims that are Impaired by the Plan or have been paid in full pursuant thereto shall be deemed modified as against the Debtor as set forth in the Plan.

**10.6 Revesting of Assets.** Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor will be vested with all of the property of the Estate, wherever situate, free and clear of all Claims and Liens. Without limiting the generality of the foregoing, on and after the Effective Date, the Debtor shall be vested with all of the property of the Estate, wherever situated, free and clear of any Claims based on any form of successor liability or similar or related theory of liability. On and after the Effective Date, (i) the Debtor shall be free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Court, may operate its business and may use, acquire or dispose of its assets free of any restrictions imposed by the Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in the Plan, or the Confirmation Order. Without limiting the generality of the foregoing and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action, will be preserved and retained solely for the Debtor's commencement, prosecution, use and benefit.

**10.7 Preservation of Causes of Action.** Pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Dates, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtor on behalf of themselves expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtor, will not pursue any and all available Causes of Action against them. The Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

**10.8 No Limitation on Effect of Confirmation.** Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in § 1141 of the Bankruptcy Code. Confirmation will bind the Debtor, all Creditors, Equity Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Equity Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan and whether or not a proof of Claim or Equity Interest has been filed or deemed to have been filed under §§ 501 or 1111(a) of the Bankruptcy Code, or such Claim or Equity Interest is allowed under § 502 of the Bankruptcy Code.

## 11. **RETENTION OF JURISDICTION**

**11.1 Retention of Jurisdiction.** Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by the Debtor, or the parties specified herein:

**11.1.1.** To hear and determine any objections to the allowance of Claims, including any objections by the Debtor with respect to any Claims which have been reinstated or assumed in accordance with the terms of the Plan;

**11.1.2.** To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under the Plan and applicable provisions of the Bankruptcy Code;

**11.1.3.** To determine any and all applications for the rejection or assumption and assignment of Executory Contracts or for the rejection or assumption and assignment, as the case may be, of Unexpired Leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

**11.1.4.** To modify the Plan pursuant to § 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

**11.1.5.** To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

**11.1.6.** To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case;

**11.1.7.** To adjudicate all controversies concerning the classification of any Claim;

**11.1.8.** To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

**11.1.9.** To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof;

**11.1.10.** To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor;

**11.1.11.** To determine all questions and disputes regarding recovery of and entitlement to any property of the Debtor, or in any proceeds thereof;

**11.1.12.** To adjudicate all Causes of Action with respect to which the Debtor is a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

**11.1.13.** To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to the Plan;

**11.1.14.** To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor's limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

**11.1.15.** To determine such other matters as may be provided for in the Confirmation Order and the Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

**11.1.16.** To enter a Final Decree closing the Chapter 11 Case;

**11.1.17.** To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court;

**11.1.18.** To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

**11.1.19.** To determine issues and disputes with respect to the Refinanced Secured Loan Documents arising after the Effective Date; and

**11.1.20.** Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 345, 505, and 1146 of the Bankruptcy Code.

**11.2 Occurrence of Effective Date.** The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article 11 or the Confirmation Order.

**11.3 Failure of Bankruptcy Court to Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

other court of competent jurisdiction with respect to such matter.

## 12. **MISCELLANEOUS PROVISIONS**

### 12.1 Modifications to Plan.

**12.1.1** The Debtor may alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with § 1125 of the Bankruptcy Code. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before Confirmation.

**12.1.2** The Debtor may also seek to alter, amend or modify the Plan at any time after Confirmation so long as (i) the Plan has not been substantially consummated, (ii) as altered, amended or modified the Plan satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and (iii) the Bankruptcy Court authorizes the proposed modification after notice and a hearing under § 1129 of the Bankruptcy Code.

**12.1.3** A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder. Prior to the Effective Date, the Debtor may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Equity Interest.

**12.1.4** The Debtor further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**12.1.5** The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend, amend or modify the Plan before or after the Confirmation Date, including making any amendments or modifications to satisfy the requirements of § 1129(b) of the Bankruptcy Code, if necessary.

### 12.2 Notices.

Except as otherwise set forth below, all notices, requests, elections or demands in connection with the Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under the Plan, shall be in writing and shall be delivered by electronic mail and addressed to both of the following:

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

| If to Debtor: | Visual Technology Innovations, Inc.<br>Attn: Mathu Rajan<br>1105 William Penn Dr.<br>Bensalem, Pa 19020<br>mathu.rajan@vti-global.com |
|---|---|
| With a Copy to: | Larson & Zirzow, LLC<br>Attn: Matthew C. Zirzow, Esq.<br>850 E. Bonneville Ave.<br>Las Vegas, Nevada 89101<br>E-mail: mzirzow@lzlawnv.com |

**12.2.1.** All notices and requests to Holders of Claims of any Class shall be sent to them at their known address. Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt. The addressed in a Holder's filed proof of claim shall be deemed an appropriate address unless an updated address is provided to the Debtor in writing.

**12.3 Headings.** The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**12.4 Non-Severability of Plan Provisions.** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of the Debtor and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor and any other Person affected by such provision; and (c) nonseverable and mutually dependent.

**12.5 Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties and obligations of the Debtor and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

**12.6 Successor and Assigns.** The rights and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7 Modification of Payment Terms.** The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim or Allowed Equity Interest in any manner adverse only to the holder of such Allowed Claim or Allowed Equity Interest at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim or Allowed Equity Interest treatment is being adversely affected.

**12.8 Effectuating Documents; Further Transactions.** The Debtor and the Reorganized Debtor are each authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued, transferred or canceled pursuant to the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously. The Debtor and the Reorganized Debtor are authorized and directed to do such acts and execute such documents as are necessary to implement the Plan.

**12.9 Exemption from Transfer Taxes.** Pursuant to § 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estate property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.10 Post Confirmation Conversion or Dismissal.** A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Case under § 1112(b) of the Bankruptcy Code, after the Plan is confirmed, if there is a material, continuing and uncured default in performance of the Plan or if cause exists under § 1112(b) of the Bankruptcy Code. If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed or distributed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during these Chapter 11 Case. In addition, any Allowed Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority, under § 507(a)(1) of the Bankruptcy Code in any such subsequent Chapter 7 case to which this case is converted.

**12.11 Cramdown.** In the event that any impaired Class is determined to have rejected the Plan in accordance with § 1126 of the Bankruptcy Code, the Debtor may invoke the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan. The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170    Fax: (702) 382-1169

to § 1129(b) of the Bankruptcy Code requires modification.

**12.12 Fees and Reporting to the United States Trustee.** Prior to the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, are obligated to pay the Office of the U.S. Trustee all U.S. Trustee Fees. All U.S. Trustee Fees that accrue prior to Confirmation of the Plan will be paid on or before the Effective Date pursuant to § 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee Fees accruing post-confirmation are due on a calendar quarter basis and will be reported on post-confirmation operating reports as required by the U.S. Trustee Guidelines.

**12.13 Post-Confirmation Quarterly Reports and Fees.** Until the entry of the final decree, the Debtor shall File, not later than twenty (20) days after the end of the calendar quarter which occurs after the entry of the Confirmation Order, and every three (3) months thereafter, a report of the action taken by the Reorganized Debtor and the progress made toward consummation of the confirmed Plan. U.S. Trustee Fees continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to Final Decree.

**12.14 Entire Agreement.** The Plan, as described herein, the Disclosure Statement and exhibits thereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto may rely on or shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

Dated: May 9, 2025.

VISUAL TECHNOLOGY INNOVATIONS, INC.,
a Nevada corporation:

By: */s/ Mathu Rajan*
     Mathu Rajan, President

Prepared and submitted:

By: */s/ Matthew C. Zirzow*
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Attorneys for Debtor

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

# EXHIBIT 2

**VISUAL TECHNOLOGY INNOVATIONS, INC.**
**FINANCIAL PROJECTIONS**

| | | | | Eff. Date | Q2 | Q3 | Q4 | Q5 | Q6 | Q7 | Q8 | Q9 | Q10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Plan Support from VSI | | | | $9,930,000 | $1,500,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 |
| **Income Subtotals** | | | | | **$1,500,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** |
| | Allowed | | Total Paid Thru Plan | | | | | | | | | | |
| **EXPENSE** | Claim | Class % | With Interest | | | | | | | | | | |
| Bankruptcy Claims | | | | | | | | | | | | | |
| Administrative Claims | $40,000 | N/A | **$40,000** | $40,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claims | $500 | N/A | **$500** | $500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 1 - Secured Claims | $0 | N/A | **$0** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 2 - Priority Non-Tax | | | | | | | | | | | | | |
| Cl. 3 - Unsec. Vendor | | | | | | | | | | | | | |
| Armstrong Teasdale, LLP | $1,875,449 | 99.67% | **$2,073,136** | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 |
| Gainey McKenna | $6,300 | 0.33% | **$6,864** | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 |
| Cl. 4 - Unsec. Litigation* | $1,328,725 | 100% | **$1,328,725** | $1,328,725 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 5 - Punitive Damages* | $5,140,704 | 100% | **$6,259,000** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Operational Expenses | | | | $3,000 | $3,000 | | | | | | | | |
| **Expense Subtotals** | | | | **$1,476,225** | **$107,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** |
| **RUNNING CASH BALANCE** | | | | $23,775 | $26,775 | $32,775 | $38,775 | $44,775 | $50,775 | $56,775 | $62,775 | $68,775 | $74,775 |

*Pending Claim Objection.

**VISUAL TECHNOLOGY INNOVATIONS, INC.**
**FINANCIAL PROJECTIONS**

| | <u>Q11</u> | <u>Q12</u> | <u>Q13</u> | <u>Q14</u> | <u>Q15</u> | <u>Q16</u> | <u>Q17</u> | <u>Q18</u> | <u>Q19</u> | <u>Q20</u> | <u>Q21</u> | <u>Q22</u> | <u>Q23</u> |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Plan Support from VSI | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $110,000 | $150,000 | $150,000 | $150,000 |
| **Income Subtotals** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$110,000** | **$150,000** | **$150,000** | **$150,000** |
| | | | | | | | | | | | | | |
| **EXPENSE** | | | | | | | | | | | | | |
| Bankruptcy Claims | | | | | | | | | | | | | |
| Administrative Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 1 - Secured Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 2 - Priority Non-Tax | | | | | | | | | | | | | |
| Cl. 3 - Unsec. Vendor | | | | | | | | | | | | | |
| Armstrong Teasdale, LLP | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $103,657 | $0 | $0 | $0 |
| Gainey McKenna | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $343 | $0 | $0 | $0 |
| Cl. 4 - Unsec. Litigation* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 5 - Punitive Damages* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $156,000 | $156,000 | $156,000 |
| Operational Expenses | | | | | | | | | | | | | |
| **Expense Subtotals** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$104,000** | **$156,000** | **$156,000** | **$156,000** |
| **RUNNING CASH BALANCE** | $80,775 | $86,775 | $92,775 | $98,775 | $104,775 | $110,775 | $116,775 | $122,775 | $128,775 | $134,775 | $128,775 | $122,775 | $116,775 |

*Pending Claim Objection.

**VISUAL TECHNOLOGY INNOVATIONS, INC.**
**FINANCIAL PROJECTIONS**

| | <u>Q24</u> | <u>Q25</u> | <u>Q26</u> | <u>Q27</u> | <u>Q28</u> | <u>Q29</u> | <u>Q30</u> | <u>Q31</u> | <u>Q32</u> | <u>Q33</u> | <u>Q34</u> | <u>Q35</u> | <u>Q36</u> |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Plan Support from VSI | $150,000 | $150,000 | $150,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 |
| **Income Subtotals** | **$150,000** | **$150,000** | **$150,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** |
| | | | | | | | | | | | | | |
| **EXPENSE** | | | | | | | | | | | | | |
| Bankruptcy Claims | | | | | | | | | | | | | |
| Administrative Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 1 - Secured Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 2 - Priority Non-Tax | | | | | | | | | | | | | |
| Cl. 3 - Unsec. Vendor | | | | | | | | | | | | | |
| Armstrong Teasdale, LLP | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Gainey McKenna | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 4 - Unsec. Litigation* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 5 - Punitive Damages* | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 |
| Operational Expenses | | | | | | | | | | | | | |
| **Expense Subtotals** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** |
| **RUNNING CASH BALANCE** | $110,775 | $104,775 | $98,775 | $102,775 | $106,775 | $110,775 | $114,775 | $118,775 | $122,775 | $126,775 | $130,775 | $134,775 | $138,775 |

*Pending Claim Objection.

**VISUAL TECHNOLOGY INNOVATIONS, INC.**
**FINANCIAL PROJECTIONS**

| | Q37 | Q37 | Q39 | Q40 | Q41 | Q42 | Q43 | Q44 | Q45 | Q46 | Q47 | Q48 | Q49 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | |
| Plan Support from VSI | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 |
| **Income Subtotals** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** |
| | | | | | | | | | | | | | |
| **EXPENSE** | | | | | | | | | | | | | |
| Bankruptcy Claims | | | | | | | | | | | | | |
| Administrative Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 1 - Secured Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 2 - Priority Non-Tax | | | | | | | | | | | | | |
| Cl. 3 - Unsec. Vendor | | | | | | | | | | | | | |
| Armstrong Teasdale, LLP | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Gainey McKenna | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 4 - Unsec. Litigation* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 5 - Punitive Damages* | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 |
| Operational Expenses | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Expense Subtotals** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** |
| **RUNNING CASH BALANCE** | $142,775 | $146,775 | $150,775 | $154,775 | $158,775 | $162,775 | $166,775 | $170,775 | $174,775 | $178,775 | $182,775 | $186,775 | $190,775 |

*Pending Claim Objection.

**VISUAL TECHNOLOGY INNOVATIONS, INC.**
**FINANCIAL PROJECTIONS**

| | Q50 | Q51 | Q52 | Q53 | Q54 | Q55 | Q56 | Q57 | Q58 | Q59 | Q60 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | |
| Plan Support from VSI | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 | $160,000 |
| **Income Subtotals** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** | **$160,000** |
| | | | | | | | | | | | |
| **EXPENSE** | | | | | | | | | | | |
| Bankruptcy Claims | | | | | | | | | | | |
| Administrative Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Priority Tax Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 1 - Secured Claims | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 2 - Priority Non-Tax | | | | | | | | | | | |
| Cl. 3 - Unsec. Vendor | | | | | | | | | | | |
| Armstrong Teasdale, LLP | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Gainey McKenna | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 4 - Unsec. Litigation* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Cl. 5 - Punitive Damages* | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $156,000 | $175,000 |
| Operational Expenses | | | | | | | | | | | |
| **Expense Subtotals** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$156,000** | **$175,000** |
| **RUNNING CASH BALANCE** | $194,775 | $198,775 | $202,775 | $206,775 | $210,775 | $214,775 | $218,775 | $222,775 | $226,775 | $230,775 | $215,775 |

*Pending Claim Objection.

# EXHIBIT 3

## VISUAL TECHNOLOGY INNOVATIONS, INC.
## LIQUIDATION ANALYSIS

**ASSETS**

| Item | Liquidation Value | |
|---|---|---|
| Bank Account | $2,321 | |
| 52,562 Shares in Stream TV Networks | $788,430 | ($15/per share projected liquidation value) |
| **Total:** | **$790,751** | |

**PAYMENT OF CLAIMS**

| Type of Claim | Claim Amount | Recovery Amount Under Plan | Recovery % Under Plan | Recovery Amount in Liquidation | Recovery % in Liquidation | Difference in Projected Recovery Under Plan |
|---|---|---|---|---|---|---|
| **Administrative Claims** | | | | | | |
| Hypo. Ch. 7 Trustee 326 Commission* | N/A | N/A | N/A | $42,672 | 100% | N/A |
| Hypo. Ch. 7 Prof'l Fees (Counsel)* | N/A | N/A | N/A | $20,000 | 100% | N/A |
| Ch. 11 Administrative Claims** | $40,000 | $40,000 | 100% | $40,000 | 100% | 0% |
| **Subtotal Administrative Claims** | **$40,000** | **$40,000** | **100%** | **$102,672** | **100%** | |
| | | | | | | |
| **Priority Claims** | | | | | | |
| Priority Tax Claims (Unclassified) | $0 | $0 | 0% | $0 | 0% | 0% |
| Class 1 - Priority Non-Tax Claims | $0 | $0 | 0% | $0 | 0% | 0% |
| | | | | | | |
| **Unsecured Claims** | | | | | | |
| Class 2: Unsecured Vendor Claims | $1,881,749 | $1,881,749 | 100% | $360,133 | 19.14% | -80.86% |
| Class 3: Unsecured Litigation Claims* | $1,713,568 | $1,713,568 | 100% | $327,946 | 19.14% | -80.86% |
| Class 4: Punitive Damages Claims** | $5,140,704 | $5,140,704 | 100% | $0 | 0% | -100.00% |
| | | | | | | |
| **Class 5: Equity** | N/A | N/A | N/A | N/A | N/A | N/A |

*Claim Objection pending seeking to disallow $384,843.24 in attorney's fees and costs.

**Claim Objection pending seeking to disallow entire claim.