**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email:  ccarlyon@carlyoncica.com
dcica@carlyoncica.com
tfrey@carlyoncica.com

*Nevada Counsel for Creditor, Mark L. Bunce*

**MILLER & MARTIN PLLC**
PAUL ALEXANDER, ESQ.
(*Pro Hac vice admitted*)
MICHAEL KOHLER, ESQ.
(*Pro Hac vice admitted*)
1180 W Peachtree Street, NW, Suite 2100
Atlanta, GA 30309
Phone: (404) 962-6100
Email:  paul.alexander@millermartin.com
michael.kohler@millermartin.com

*Lead Counsel for Creditor, Mark L. Bunce*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 25-10024-abl<br>Chapter 11 |
| VISUAL TECHNOLOGY INNOVATIONS, INC., | |
| Debtor. | **RESPONSE BY MARK L. BUNCE IN OPPOSITION TO MOTION FOR ORDER: (I) APPROVING ADEQUACY OF DISCLOSURES IN DISCLOSURE STATEMENT, ETC.** |
| | Hearing Date: June 25, 2025<br>Hearing Time: 1:30 P.M. |

Mark L. Bunce, a/k/a Mark Leonard Bunce ("Mr. Bunce"), a creditor in the above-captioned bankruptcy case, hereby responds in opposition to the Motion for Order: (1) Approving Adequacy of Disclosure Statement, etc. (Doc. 83) (the "Motion to Approve Disclosure Statement"), and objects to the proposed Disclosure Statement (Doc. 81) (the "Disclosure Statement") of Debtor Visual Technology Innovations, Inc. (the "Debtor"). In support, Mr. Bunce respectfully shows the following:

## I.   INTRODUCTION

1.   Mr. Bunce was fraudulently induced into loaning more than $1,000,000 to the Debtor, an alter ego of Mathu Rajan ("Mr. Rajan"), which funds were misappropriated Mr. Rajan. This case was filed in bad faith as a litigation tactic to avoid an adverse ruling on a motion for partial summary judgment in a lawsuit brought by Mr. Bunce against the Debtor and Mr. Rajan in the U.S. District Court for the Eastern District of Pennsylvania.[1]  The Disclosure Statement and Debtor's proposed Chapter 11 Plan of Reorganization (Doc. 82) (the "Proposed Plan") are merely the latest efforts by Mr. Rajan to hinder and delay Mr. Bunce's rightful efforts to adjudicate his claims and collect on his debt.

2.   While it appears as though the Chapter 11 Plan may propose to pay in full Mr. Bunce's general unsecured claims for unpaid principal in the amount of $1,050,000.00, and accrued interest as of the date of filing in the amount of $278,724.66,[2] there is simply no way for the Debtor to fund such payments, and the Disclosure Statement is devoid of verifiable information regarding how such funding would supposedly occur. Moreover, as set forth further below, the Disclosure Statement otherwise lacks adequate information for creditors and interest holders to make an

---

[1] Nothing in the response waives, releases, or impairs any claim or rights of Mr. Bunce, all of which claims and rights are expressly reserved and preserved, including, without limitation, the claims asserted in the U.S. District Court for the Eastern District of Pennsylvania.

[2] As discussed below, the Disclosure Statement is inadequate and unclear regarding its treatment of Mr. Bunce's claim. Mr. Bunce filed a general unsecured proof of claim in the amount of $6,854,271.60, consisting of unpaid principal in the amount of $1,050,000.00, accrued interest as of the date of filing in the amount of $278,724.66, attorneys' fees as of December 31, 2024, in the amount of $384,843.24, and estimated punitive damages in the amount of $5,140,703.70 (Claim No. 3-2). On April 15, 2025, the Debtor filed an objection to the punitive damages and attorneys' fees portions of Mr. Bunce's claim (Doc. 61) (the "Objection to Claim").

informed judgment about the Proposed Plan.  Accordingly, Mr. Bunce objects to the Disclosure Statement as inadequate, and opposes the entry of an order granting the Motion to Approve Disclosure Statement.

## II.  BACKGROUND

3. Mr. Bunce has previously provided detailed factual background and procedural information in his Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc. 48) ("Motion to Transfer"), and in his Reply to Debtor's Opposition to Motion to Transfer Venue; or, in the Alternative, to Dismiss (Doc. 87) ("Reply in Support of Motion to Transfer").  Instead of belaboring those facts, Mr. Bunce incorporates herein by reference the introduction and background sections contained in the Motion to Transfer Venue and exhibits attached thereto, together with the introduction section of the Reply in Support of Motion to Transfer and exhibits attached thereto.  (*See* Doc. 48 at §§ 1, 4–22, Exs. 1-7; and Doc. 87, Intro. and Exs. A & B).[3]

4. On April 18, 2025, the Debtor filed its monthly operating report covering March 2025 (Doc. 66).  The monthly operating report included a copy of a bank statement reflecting a withdrawal of all remaining funds in the account and an ending balance of $0.00.  Further, the March 2025 monthly operating report reflects that the Debtor had still not filed tax returns and had not paid all taxes.  (*See* Doc. 66 at Ques. No. 6, and p. 5.)

5. The Debtor failed to timely file its monthly operating report covering April 2025.

6. On May 9, 2025, the Debtor filed its Disclosure Statement, Proposed Plan, and the Motion to Approve Disclosure Statement.

---

[3] Mr. Bunce requests that the Court take judicial notice of the papers, pleadings, and court dockets filed in other cases and referenced herein pursuant to FRE 201.  *See, e.g., U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)("a court may take judicial notice of its own records in other cases"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020)(court may take judicial notice of orders and filings, including  proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue); *Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.)*, 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.")

7. On May 12, 2025, the Debtor filed Debtor's Notice of Holding Funds in Trust Earmarked for Subchapter V Trustee's Fees and Costs (Doc. 86), including an exhibit showing a wire transfer from Visual Semiconductor, Inc. ("VSI") in the amount of $6,500.00 into the IOLTA account of Debtor's counsel. There is no indication of the terms under which the funds were delivered.

8. The Debtor's Motion to Amend Voluntary Petition to Remove Subchapter V Election and Instead Proceed Under Standard Chapter 11, etc. (Doc. 53) came before the Court for a hearing on May 14, 2025, and the Court granted the motion by oral ruling on June 9, 2025.

9. The Objection to Claim came before the Court for a hearing on May 14, 2025, and the Court is scheduled to issue an oral ruling on the objection on June 17, 2025.

10. The Motion to Transfer Venue came before the Court for a hearing on May 21, 2025, and the Court is scheduled to issue an oral ruling on the motion on June 27, 2025.

11. On May 15, 2025, Debtor's counsel filed its First Interim Application for Compensation (Doc. 90), seeking an interim award of fees in the amount of $40,230.50, and expenses in the amount of $887.29, covering the period of January 6 through May 12, 2025. The interim fee application requests permission to apply a pre-petition retainer in the amount of $27,117.00, which was provided to the Debtor under a loan from VSI. (*See* Doc. 13, Disclosure of Compensation of Attorney for Debtor). Following a stipulation between the Debtor and Mr. Bunce (Doc. 97), on June 4, 2025, the Court entered an order (Doc. 98) whereby any of Mr. Bunce's objections to any interim fee applications are reserved until a hearing on a final fee application.

12. On May 22, 2025, the U.S. Bankruptcy Court for the Eastern District of Pennsylvania dismissed with prejudice Mr. Rajan's Chapter 13 case, with a one (1) year bar on refiling any further bankruptcy cases. A genuine copy of the order dismissing with prejudice Mr. Rajan's Chapter 13 case is attached hereto as **Exhibit "A"** and incorporated herein.

13. On June 10, 2025, the U.S. Securities and Exchange Commission (the "SEC") filed its Response to the Motion to Approve Disclosure Statement (Doc. 100) indicating that "the SEC is investigating whether [the] Debtor…,engaged in pre-petition conduct that violated the federal securities laws." (*See* Doc 100 at ¶ 1). In its Response, the SEC also stated that "[a]ny such

violations by the Debtor could give rise to monetary claims by the SEC including claims for disgorgement of ill-gotten gains, prejudgment interest, and civil penalties." *Id.* Further, the SEC pointed out that the Disclosure Statement provides no supporting detail or financial disclosure relating to VSI. (*See* Doc 100 at ¶ 9).

### III.    MEMORANDUM OF POINTS AND AUTHORITIES

Bankruptcy Code Section 1125 requires a Chapter 11 disclosure statement to provide "adequate information" to creditors and interest holders in order for them to make an "informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The adequacy of disclosure statement information has been evaluated using numerous factors, including the present condition of the debtor while in Chapter 11, the classes and claims within the reorganization plan, the estimated administrative expenses (including attorneys' fees), financial information and projections relevant to the decision to accept or reject the debtor's plan, and information relevant to the risks posed to creditors under the debtor's plan. *In re Islet Scis., Inc.*, 640 B.R. 425, 459–60 (Bankr. D. Nev. 2022) (citing 7 COLLIER ON BANKRUPTCY § 1125.02[2] (Richard Levin & Henry J. Sommer eds 16th ed. 2021); *In re Reilly*, 71 B.R. 132, 134-35 (Bankr. D. Mont. 1987)); *see also In re Rosenblum*, No. 18-17155-MKN, 2019 WL 5782589, at *3 (Bankr. D. Nev. July 15, 2019).

"[T]he determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court." *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) (*Texas Extrusion Corp. v. Lockheed Corp. (Matter of Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988)). "The plan proponent has the burden to show that its proposed disclosure statement contains adequate information." *In re Rosenblum*, 2019 WL 5782589, at *4 (citing *In re Michelson*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992)).

Moreover, a court may decline to approve a disclosure statement when it is evident that the related plan is not confirmable. *See United States Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex.

1996); *In re Atlanta West VI*, 91 B.R. 620,622 (Bankr. N.D. Ga. 1988). It would be a futile exercise to send a disclosure statement to creditors and then solicit votes on a proposed plan which is irrefutably unconfirmable.

The Debtor's Disclosure Statement simply does not provide adequate information to allow its creditors and interest holders to make an informed judgment on the Proposed Plan. Furthermore, even if the disclosures were adequate (they are not), the Proposed Plan is not feasible. For those reasons, and as set forth in this response, Mr. Bunce objects to the Disclosure Statement and requests that the Motion to Approve Disclosure Statement be denied.

      **A.     Inadequacy of disclosures.**

*i. The Disclosure Statement does not provide adequate information regarding funding for the Proposed Plan.*

According to the Disclosure Statement "[t]he Debtor is a holding company that holds shares in Stream as its only asset and thus could only raise money to pay its creditors by either selling or leveraging those shares and/or obtaining funding from a third party." (*See* Doc. 81, § VI. A. 1.) The Disclosure Statement goes on to state that "VSI was and is the only entity placing value in the Debtor's primary asset. VSI, which has committed to funding the Plan, was acquired in April 2025 by a company publicly traded on the Vienna Stock Exchange (Wiener Börse). Through its new parent company, VSI has the required resources to meet all financial obligations of the Plan. Projections of VSI's contributions to fund the Plan are attached as **Exhibit 2**." (*Id.*)

The Disclosure Statement is completely devoid of any reliable and verifiable information regarding the ability of VSI and/or its supposed, unidentified new parent company, to fund the Proposed Plan. In fact, the Disclosure Statement has no information whatsoever demonstrating the wherewithal of VSI or any company to fund the Proposed Plan. Furthermore, the Disclosure Statement is totally lacking any documentation which demonstrates that VSI or any company has agreed and/or is duly authorized to fund the Proposed Plan.

Given these glaring shortcomings, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*ii. The Disclosure Statement does not provide adequate information regarding the supposed value of Stream TV shares and the appeal of the sale of substantially all of Stream TV's assets.*

According to the Disclosure Statement, "[t]he Debtor's proposed funding is coming from VSI, and thus any actions taken in the Stream bankruptcy cases against VSI may impact this case. Additionally, the value of the Debtor's shares in Stream is also contingent on the successful outcome of the currently pending appeals before the Pennsylvania District Court and the reversal of Stream's asset sale to SeeCubic." **(**Doc. 81, § VII. L.**)**. While several pages of the Disclosure Statement are devoted to discussing the Stream TV Chapter 11 case pending in the Eastern District of Pennsylvania, nowhere in the Disclosure Statement is there information regarding the likely outcome of the appeal of the sale of substantially all of the assets of Stream TV, without a stay. In fact, as the sale of substantially all of the assets of Stream TV has closed, and as a motion for stay pending appeal was denied, the appeal is moot, and there is little to no chance the sale will be overturned. *See Pittsburgh Food & Bev., Inc. v. Ranallo*, 112 F.3d 645, 649-651 (3d Cir. 1997) (because the appellant did not obtain a stay of the bankruptcy court's order approving a sale of assets, the district court was unable to grant effective relief to the appellant, and the appeal to the district court was moot and properly dismissed); **(**Doc. 81, at 7**)**.

In its schedules, the Debtor values its shares in Stream TV at $3,942,120. **(**Doc. 13, at 2**)**. In exhibit 3 to the Disclosure Statement, the Debtor attributes a liquidation value of $788,430 to its shares in Stream TV. The Disclosure Statement fails to include any information to support a proper valuation (liquidation or otherwise) of shares in Stream TV. Presumably this information was omitted because it would demonstrate that the shares in Stream TV are worthless, and therefore, the Proposed Plan will not be funded and is infeasible.

Because the funding of the Proposed Plan is contingent on an appeal pending in Eastern District of Pennsylvania and on shares in Stream TV having value, and because the Disclosure Statement includes inadequate information regarding the subject appeal and supposed value of

Stream TV shares, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*iii. The Disclosure Statement does not provide adequate information regarding how claims will be treated.*

While the deadline for governmental entities is not until July 7, 2025, to date, only four (4) creditors have filed proofs of claim. Those creditors are (i) the Internal Revenue Service, which filed a placeholder claim in the amount of $500.00 (Claim 1-1); (ii) Armstrong Teasdale, LLP, which filed a general, unsecured claim in the amount of $1,875,448.61 (Claim 2-1); (iii) Mr.. Bunce who filed a general, unsecured claim in the amount of $6,854,271.60 (Claim 3-2); and (iv) Gainey McKenna & Egleston, which filed a general, unsecured claim in the amount of $6,300.00.

As stated above, Mr. Bunce was fraudulently induced into loaning more than $1,000,000 to the Debtor. In connection therewith, Mr. Bunce timely filed a general unsecured proof of claim in the amount of $6,854,271.60, consisting of unpaid principal in the amount of $1,050,000.00, accrued interest as of the date of filing in the amount of $278,724.66, attorneys' fees as of December 31, 2024, in the amount of $384,843.24, and estimated punitive damages in the amount of $5,140,703.70 (Claim No. 3-2). Mr. Bunce's proof of claim is subject to an objection scheduled for an oral ruling on June 17, 2025.

The Proposed Plan divides non-priority, unsecured claims into the following three (3) classes: (a) Class 3 – Allowed Unsecured Vendor Claims; (b) Class 4 – Allowed Unsecured Litigation Claims; and (c) Class 5 – Allowed Punitive Damages Claims. Unsecured Vendor Claims are defined as [a]ny Non-Priority Unsecured Claims other than Unsecured Litigation Claims and Punitive Damages Claims, and only to the extent it is for services provided as a vendor to the Debtor." (*See* Doc 81 at § 1.1.63). As the terms "vendor" and "services" are not defined in the definition of Class 3 claims, the definition of Class 3 Claims is inadequate.

Unsecured Litigation Claims are defined as "[a]ny Unsecured Claim arising out of active litigation pending as of the Petition Date, and only to the extent it is for an award of actual or compensatory damages under applicable law, and excluding any Punitive Damages Claims." (*See*

Doc 81 at § 1.1.64). While Mr. Bunce was actively pursuing litigation against the Debtor and Mr. Rajan as of the Petition Date, arguably his claims do not "arise out of" active litigation, and Mr. Bunce has not yet been "awarded" damages. Due to these vagaries the definition of Class 4 Claims is inadequate.

Furthermore, as it is possible that creditors will not know whether or not their claims are "Allowed" until ninety (90) days from the Effective date of the Proposed Plan, creditors do not actually know how their respective claims are proposed to be treated. (*See* Doc 81, § IX. C.) Mr. Bunce notes that while Armstrong Teasdale, LLP, and Gainey McKenna are specifically listed in exhibit 2 to the Disclosure Statement (which supposedly outlines payments to claim-holders), there is no such listing for Mr. Bunce, evidencing the lack of clarity regarding how his claim is to be treated under the Proposed Plan. Further, while it appears that Armstrong Teasdale, LLP, and Gainey McKenna are to be paid interest on their claims, inexplicably it appears there is no provision to pay interest after the Petition Date to Mr. Bunce.

Due to the issues with inadequate description of claims treatment and class definitions, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*iv. The Disclosure Statement does not provide adequate information regarding tax debt and possible claims of the SEC.*

Exhibit 2 of the Disclosure Statement lists tax debt in the amount of $500, although clearly the IRS's claim is merely a placeholder and the actual amount of tax debt owed to the federal government appears to be unknown. Furthermore, as the bar date for governmental entities is July 7, 2025, it is possible the other taxing authorities will assert claims. Mr. Rajan's statement in support of the Debtor's petition and the Debtor's monthly operating reports reflect that it has not filed tax returns and that it has not paid taxes. (*See* Doc. 1, Verified Statement of Mathu G. Rajan in Support of Voluntary Petition, and Doc. 66 at Ques. No. 6). There is an absence of any information in the Disclosure Statement regarding how the Debtor will prepare and file income tax returns and determine its tax debt, if any. Furthermore, based on the Response filed by the SEC, it appears that

the Debtor may have liability to the SEC. The Disclosure Statement fails to address potential liability to the SEC.

Based on these shortcomings, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*iv. The Disclosure Statement does not provide adequate information regarding how VSI's loan for attorneys' fees and transfer of funds for Subchapter V Trustee fees will be addressed.*

The Disclosure of Compensation of Attorney for Debtor reflects that VSI made a loan to the Debtor in the amount of $27,117.00 for a retainer held by Debtor's counsel. (*See* Doc. 13, Disclosure of Compensation of Attorney for Debtor). Further, Debtor's Notice of Holding Funds in Trust Earmarked for Subchapter V Trustee's Fees and Costs (Doc. 86) reflects that VSI transferred $6,500 to Debtor's counsel supposedly earmarked for future fees which may be due to the Subchapter V Trustee. The Disclosure Statement fails to indicate how these two payments from VSI will be addressed. As such, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*v. The Disclosure Statement does not provide adequate information regarding the Debtor's financial condition.*

Not only does the Disclosure Statement fail to value its sole asset, but the Disclosure Statement fails to indicate how it can proceed when the most recently filed monthly operating report included a copy of a bank statement reflecting a withdrawal of all remaining funds in the account and an ending balance of $0.00. (*See* Doc 66, at 5). As evidenced by its monthly operating reports and by the First Interim Application for Compensation (Doc. 90) filed by Debtor's counsel, the Debtor is administratively insolvent. Further, the Disclosure Statement is clearly inadequate and the Motion to Approve Disclosure Statement should be denied.

*vi. The Disclosure Statement does not provide adequate information regarding VSI and management by Mr. Rajan.*

The Proposed Plan essentially asks creditors to replace one set of failed promises with another set of promises. Further, the Disclosure Statement provides that "[f]rom the Effective Date,

the Debtor's present sole officer and director, Mathu Rajan, shall continue to manage and operate the Debtor's business, and with full authority to make all decisions and take all actions on behalf of the Reorganized Debtor to effectuate the Plan. VSI shall own and control all of the shares of the Reorganized Debtor." (Doc 81 § 4.3.). As reflected in the January 5, 2024 ruling by the judge in the Stream TV case, Mr. Rajan's past misconduct gave rise to the appointment of a trustee in the Stream TV Chapter 11 case. (*See* Creditor's Reply to Debtor's Opposition to Motion to Transfer, Doc. 87, Ex. A). Given Mr. Rajan's past problematic conduct in connection with the management of a company in bankruptcy (Stream TV), it is objectionable that the Disclosure Statement fails to adequately disclose (a) the corporate structure of VSI, (b) the extent of Mr. Rajan's management and ownership of VSI and its new parent company, and (c) Mr. Rajan's role as an officer and/or director of VSI and any of its affiliates.

    **B.**  **The Debtor's Plan is Not Feasible.**

    The ability of the Debtor to fund the Proposed Plan is illusory, and a reorganization is simply not viable, as it is entirely reliant on the unsubstantiated, alleged promise of a multi-million dollar infusion of money which is contingent upon an appeal which is doomed to failure. To comply with the feasibility standards of Section 1129(a)(11), a debtor must "must offer more than speculation about the source of funding for the plan." *In re Trans Max Techs., Inc.*, 349 B.R. 80, 93 (Bankr. D. Nev. 2006) (finding a proposed plan that was based upon the assertion that a third-party investor would provide 100% of the plan's funding in order to reap the potential benefits of an unproven technology, without documentation confirming the source of that funding, was not feasible). This would include offing "evidence to the court of any binding contractual commitments with investors to infuse new cash into" the Debtor. *Id.* The Debtor has not provided any documentation that there is actually a binding agreement to fund the plan, and the Debtor's explanation for why VSI would provide the funding defies logic.

    Indeed, the Debtor admits that its "proposed funding is coming from VSI, and thus any actions taken in the Stream bankruptcy cases against VSI may impact this case. Additionally, the value of

the Debtor's shares in Stream is also contingent on the successful outcome of the currently pending appeals before the Pennsylvania District Court and the reversal of Stream's asset sale to SeeCubic." (Doc. 81, § VII. L.).

The Disclosure Statement thus does not provide any information capable of demonstrating the feasibility of the Debtor's plan. Without such information, the disclosure statement is completely inadequate for the task of giving creditors the ability to make an "informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

### IV.   CONCLUSION

For the reasons set forth above, Mr. Bunce objects to the Disclosure Statement and requests that the Motion to Approve Disclosure Statement be denied.  Mr. Bunce requests such other and further relief as is just and equitable.

Respectfully submitted, this 11th day of June, 2025.

**MILLER & MARTIN PLLC**

/s/ Paul M. Alexander
Paul M. Alexander, Esq.  (*Admitted pro hac vice*)
Georgia Bar No. 009003
Michael P. Kohler, Esq. (*Admitted pro hac vice*)
Georgia Bar No. 427727
Regions Plaza, Suite 2100
1180 West Peachtree Street N.W.
Atlanta, Georgia 30309-3407
Email:  Paul.Alexander@millermartin.com
Michael.Kohler@millermartin.com

*Lead Counsel for Creditor, Mark L. Bunce*

AND

**CARLYON CICA CHTD.**
DAWN M. CIA, ESQ.
Nevada Bar No. 4565
TALI J. FREY, ESQ.
Nevada Bar No. 16537
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
*Nevada Counsel for Creditor, Mark L. Bunce*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Carlyon Cica Chtd. and that, on the 11th day of June 2025, I caused to be served a true and correct copy of **MOTION TO TRANSFER VENUE; OR, IN THE ALTERNATIVE, TO DISMISS** in the following manner.

☒ (ELECTRONIC SERVICE) Under Local Rule 5005 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date written above.

☐ (OVERNIGHT COURIER) By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date written above.

☐ (FACSIMILE) By serving a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those listed on the attached service list, and on the date written above.

/s/ *Cristina Robertson*
An employee of Carlyon Cica Chtd.

# EXHIBIT "A"

**EXHIBIT "A"**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| MATHU RAJAN, ) | CASE NO. 25-10356 (DJB) |
| ) | |
| DEBTOR. ) | |
| ) | |

## ORDER DISMISSING CASE
## WITH A BAR AGAINST REFILING FOR TWELVE MONTHS

AND NOW, on this _____ day of May 2025, upon consideration of (i) Mark Bunce's Motion to Dismiss Case with Prejudice; or, in the Alternative, to Convert to Chapter 7 (*Dkt. No. 48*), and Objection to Confirmation (*Dkt, No. 45*), (ii) the Debtor's Motion for Voluntary Dismissal of Case (*Dkt. No. 67*), (iii) Objection to Confirmation of William A. Homony in his capacity as Chapter 11 Trustee of the bankruptcy estates of Stream TV Networks, Inc. and Technovative Media Inc. (*Dkt. No. 47*), and (iv) Motions to Dismiss, as Amended, by Kenneth E. West, Esq., Standing Chapter 13 Trustee (*Dkt. Nos. 40, 42 & 44*), and upon agreement with creditor Mark Bunce and with the consent of the Debtor by and through his undersigned counsel, and after due and proper notice and assignment of hearing, and based on the entire record of this case and good cause appearing, it is hereby **ORDERED**:

    1. The Debtor's chapter 13 case is hereby DISMISSED with prejudice under 11 U.S.C. §§ 105(a) and 349(a); and

    2. The Debtor, Mathu Rajan, is hereby prohibited, enjoined, and barred from refiling for bankruptcy under any chapter of the Bankruptcy Code, and in any jurisdiction for a period of 365 days from the date of entry of this Order; and

3. All other pending objections, motions, requests for relief or other matters in this case are dismissed as moot.

BY THE COURT

Date: _____

**Date: May 22, 2025**

_____
Honorable Derek J. Baker
United States Bankruptcy Judge

Consent is hereby given to the
form and content of this Order by:

**WEISBERG LAW**

/s/ *Matthew B. Weisberg*
_____
Matthew B. Weisberg, Esquire
*Attorney for Debtor, Mathu Rajan*

_____
Mathu Rajan
Debtor

**LAW OFFICE OF MICHAEL SCHWARTZ**

/s/ *Michael S. Schwartz*
_____
Michael S. Schwartz, Esquire
*Attorney for Debtor, Mathu Rajan*

**Standing Chapter 13 Trustee**

/s/ *LeeAne O. Huggins*
_____
LeeAne O. Huggins, Esquire

**OBERMAYER REBMANN
MAXWELL & HIPPEL LLP**

/s/ *Michael D. Vagnoni*
_____
Michael D. Vagnoni, Esquire
*Counsel for William A. Homony, in his capacity as Chapter 11 Trustee of the bankruptcy estates of Stream TV Networks, Inc. and Technovative Media Inc.*

**MILLER & MARTIN PLLC**

/s/ *Paul M. Alexander*
_____
Paul M. Alexander, *admitted pro hac vice*
*Co-Counsel for Mark L. Bunce*

**SMITH KANE HOLMAN, LLC**

/s/ *Nicholas M. Engel*
_____
Nicholas M. Engel, Esquire
*Co-Counsel for Mark L. Bunce*